Andrew James DEVINE,
Petitioner–Appellant,

v.

NEW MEXICO DEPARTMENT OF
CORRECTIONS,
Respondent–Appellee.

No. 87–2456.

United States Court of Appeals,
Tenth Circuit.

Jan. 24, 1989.

As Corrected on Denial of
Rehearing Feb. 22, 1989.

Tova Indritz, Federal Public Defender, Albuquerque, N.M., for petitioner-appellant.

Katherine Zinn, Asst. Atty. Gen. (Hal Stratton, Atty. Gen., with her on the brief), Santa Fe, N.M., for respondent-appellee.

Before HOLLOWAY, Chief Judge, SEYMOUR and EBEL, Circuit Judges.

SEYMOUR, Circuit Judge.

Petitioner Andrew James Devine, currently serving a life sentence in New Mexico for first degree murder, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (1982), claiming that the state unconstitutionally delayed his eligibility for parole after he committed the crime. The district court denied his petition, and Devine appeals. We conclude that the New Mexico Supreme Court violated the due process clause of the Fourteenth Amendment because the manner in which it applied New Mexico parole statutes to Devine was unforeseeable and the decision retroactively enhanced Devine's punishment. We therefore reverse.

## I.

Devine pled guilty to first degree murder in Eddy County, New Mexico on December 5, 1979, and was sentenced to life imprisonment on October 31, 1980, without mention of his parole eligibility. The offense to which Devine pled guilty occurred on August 31, 1979.

Devine subsequently brought actions both in the sentencing court and the state district court in the county of his incarceration, seeking a declaratory judgment giving him the right to a parole hearing after serving ten years of his term. Both courts denied his requested relief. Devine then brought a habeas corpus petition in the New Mexico Supreme Court, charging a violation of the ex post facto clause of the Federal Constitution. He contended that in refusing to consider him for parole after ten years of his sentence, the state impermissibly relied on a statute passed subsequent to his offense which mandated a minimum of thirty years incarceration without parole for prisoners serving life terms. The Supreme Court consolidated his case with that of another prisoner, and denied both petitions. *See Quintana v. New Mexico Dep't of Corrections*, 100 N.M. 224, 668 P.2d 1101 (1983). The court held that a New Mexico statute passed in 1977, before Devine's offense, established a mandatory prison term of thirty years for offenders serving life sentences. Devine filed this action in federal district court on March 20, 1986. The court acknowledged that Devine had exhausted his state remedies,[1] but dismissed the action on the merits.

Devine's claim arises out of two parallel but inconsistent actions taken by the 1977 session of the New Mexico legislature to amend the law governing parole eligibility for offenders sentenced to life imprisonment. Between 1955 and 1977, parole eligibility for prisoners sentenced to life was governed by N.M.Stat.Ann. § 41–17–24 (1953), which required such prisoners to serve a minimum of ten years of their sentence before becoming eligible for parole. This statute was inexplicably amended twice during the 1977 legislative session. One law, 1977 N.M.Laws ch. 216, § 12, ostensibly repealed section 41–17–24 and mandated a minimum prison term of thirty years on a life sentence before parole eligibility. Another provision, 1977 N.M.Laws ch. 217, § 3, amended section 41–17–24 in a number of respects, but retained the requirement that a prisoner serve a minimum of only ten years on a life sentence.

These two contradictory provisions did not achieve equal stature in the official compilation[2] of the New Mexico Statutes. Chapter 217, § 3 was codified originally at N.M.Stat.Ann. § 41–12–24 (Int.Supp.1977). Chapter 216 § 12 only appears as a reference in the compiler's notes, as follows:

"Laws 1977, ch. 216, § 12, repealing this section and enacting a new section 41–17–24, 1953 Comp., relating to parole authority and procedure, was approved April 6, 1977. However, Laws 1977, ch. 217, § 3, also amended this section … and was approved April 6, 1977. The provisions of the 1977 acts do not appear to be reconcilable, and this section is set out above as amended by Laws 1977, ch.

---

1. Devine first filed in federal court on December 6, 1984. The district court dismissed that action without prejudice because Devine asserted arguments that he had not raised in state court. The New Mexico Supreme Court summarily dismissed his subsequent state habeas petition, and Devine returned to federal court with the instant petition.

2. The decision on how to compile the two acts was made by the New Mexico Compilation Commission, composed of the chief justice of the New Mexico Supreme Court acting as president, the clerk of the Supreme Court acting as secretary, and the state attorney general. The powers and duties of the commission are:

"B. to provide for official, annotated compilations of the New Mexico statutes; … to determine the contents of such statutes; …
"C. to determine whether the requirements for any compilation have been met, to determine whether such compilation contains the basic law and the general law of New Mexico; and to file a certificate with the secretary of the state of New Mexico when the foregoing provisions have been met to the effect that such compilation shall be recognized as an official compilation of the statutory law of New Mexico…."
N.M.Stat.Ann. § 12–1–3 (1978).

217, § 3, as the act last signed by the governor." [3]

In the original pamphlet of the 1978 compilation, chapter 217, § 3 appeared at N.M. Stat.Ann. § 31–21–10 (1978). The compiler's notes, although referring to chapter 216, § 12, did not set out the text of that provision.[4]

In 1980, the legislature passed the provision currently in effect, 1980 N.M.Laws ch. 28. Section 1 of that act repealed section 31–21–10 in its entirety, and increased mandatory prison time on a life sentence from ten years to thirty years. Section 2 made the new minimum prison time applicable to persons sentenced for crimes occurring on or after July 1, 1979. It is the retroactive application of this statute that Devine protested in his habeas petition to the New Mexico Supreme Court. In *Quintana,* 668 P.2d 1101, the court held there was no ex post facto violation and dismissed Devine's petition. The court based its holding on its conclusion that chapter 216, § 12, rather than the 1980 law, applied to Devine and was in effect at the time of his offense and guilty plea. *Id.* at 1104.

On appeal in this action, Devine reiterates his ex post facto claim and also argues that the *Quintana* decision is so unforeseeable an interpretation of the various laws at issue as to constitute a violation of the due process clause of the Fourteenth Amendment under the Supreme Court's decision in *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

## II.

■ "The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981) (*quoting Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 325–26, 18 L.Ed. 356 (1866)) (footnote omitted).[5] For a law to be considered ex post facto "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29, 101 S.Ct. at 964 (footnote omitted); *see also Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987).

■ It is true, as will be discussed more fully below, that "a repealer of parole eligibility previously available to imprisoned offenders would clearly present ... [a] serious question under the *ex post facto* clause." *Warden v. Marrero,* 417 U.S.

---

**3.** Apparently, the commission determined that Chapter 217, § 3 should be compiled in the body of the statutes, and chapter 216, § 12 relegated to the compiler notes because it was the later of the two to be signed into law by the governor. New Mexico law thus provides:

"In carrying out the duties provided by law and contract, absent an expressed contrary legislative intent, the secretary of the New Mexico compilation commission and the advisory committee of the supreme court shall be governed by the following rules:

"A. if two or more acts are enacted during the same session of the legislature amending the same section of the NMSA, regardless of the effective date of the acts, the act last signed by the governor shall be presumed to be the law and shall be compiled in the NMSA. The history following the amended section shall set forth the section, chapter and year of all acts amending the section. A compiler's note shall be included in the annotations setting forth the nature of the difference between the acts or sections; and

"B. if two or more irreconcilable acts dealing with the same subject matter are enacted by the same session of the legislature, the last act signed by the governor shall be presumed to be the law. The act last signed by the governor shall be compiled in the NMSA with an annotation following the compiled section setting forth in full the text of the conflicting acts."

N.M.Stat.Ann. § 12–1–8 (1978).

**4.** The edition of the "Rules, Regulations, Procedures and Parole Board Statutes" of the New Mexico Parole Board in effect at the time of Devine's offense and guilty plea in August and December 1979, contained the full text of chapter 217, § 3, as set out in N.M.Stat.Ann. § 31–21–10 (1978). The pamphlet contained no reference to the thirty-year requirement of chapter 216, § 12.

**5.** The Constitution in fact contains two specific ex post facto clauses, one applying to the federal government, U.S. Const., Art. I, § 9, cl. 3, and one applying to states, U.S. Const., Art. I, § 10, cl. 1.

653, 663, 94 S.Ct. 2532, 2538, 41 L.Ed.2d 383 (1974). However, it is equally true that "[t]he *Ex Post Facto* Clause is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government." *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977) (citation omitted). *See also Rubino v. Lynaugh*, 845 F.2d 1266, 1271 (5th Cir.1988). In this case, the New Mexico Supreme Court specifically decided that the potentially retroactive repeal of parole eligibility passed by the legislature in 1980 did not apply to Devine. Rather, it held that chapter 216, § 12, a statute passed in 1977 well before Devine's offense, extended his mandatory prison term from ten to thirty years. Since no act passed by the legislature after Devine's offense was applied, the ex post facto clause is not implicated.

### III.

Although the ex post facto clause does not apply itself to Devine's dilemma, its principles apply to the actions of the New Mexico Supreme Court, for "[i]f a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Bouie*, 378 U.S. at 353–54, 84 S.Ct. at 1702–03; *see also Marks*, 430 U.S. at 191–92, 97 S.Ct. at 992–93. In determining whether the decision of the New Mexico Supreme Court was contrary to due process, we must address three issues: first, whether ex post facto principles prohibit the sort of retroactive restrictions on parole eligibility involved in this case; second, whether any such prohibition should be applied to courts through the due process clause; and third, whether the decision by the New Mexico court to apply chapter 216, § 12 to Devine was " 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.' " *Bouie*, 378 U.S. 354, 84 S.Ct. 1703 (quoting Hall, *General Principles of Criminal Law*, at 61 (2d ed.1960)).

### A.

It is evident from the Supreme Court's recent decision in *Weaver*, 450 U.S. 24, 101 S.Ct. 960, that certain retroactively applied post-offense restrictions of eligibility for supervised release run afoul of the ex post facto clause. In *Weaver*, a Florida prisoner protested a statutory change in how the state calculated the accumulation of good time release credits, or gain time. Accumulation of such credits by a prisoner makes him eligible for parole at an earlier date. The Florida legislature reduced the maximum rate at which a prisoner could earn the credits, thereby increasing the time prisoners complying with prison regulations would have to serve before becoming eligible for parole. Rejecting the argument that this credit system was not a part of a prisoner's punishment, the Supreme Court held that this potential increase in actual time served constituted an ex post facto violation:

> "[W]e need not determine whether the prospect of the gain time was in some technical sense part of the sentence to conclude that it in fact is one determinant of petitioner's prison term—and that his effective sentence is altered once this determinant is changed.
>
> " . . .
>
> " . . . By definition, this reduction in gain time accumulation lengthens the period that someone in petitioner's position must spend in prison."

*Weaver*, 450 U.S. at 32–33, 101 S.Ct. at 966–67.

The Court recognized " 'no distinction between depriving a prisoner of the right to earn good conduct deductions and the right to qualify for, and hence earn, parole.' " *Id.* at 34, 101 S.Ct. at 967 (quoting *Greenfield v. Scafati*, 277 F.Supp. 644, 646 (D.Mass.1967) (three-judge court), *aff'd. mem.*, 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968)). This recognition is consistent with the Court's much-cited statement equating retroactive restrictions on parole with retroactive amplifications of punishments:

> "[O]nly an unusual prisoner could be expected to think that he was not suffering

a penalty when he was denied eligibility for parole. For the confined prisoner, parole—even with its legal constraints—is a long step toward regaining lost freedom.

" ...

" 'It may be "legislative grace" for Congress to provide for parole but when it expressly removes all hope of parole upon conviction and sentence for certain offenses, ... this is in the nature of an additional penalty.' "

*Marrero*, 417 U.S. at 662–63, 94 S.Ct. at 2537–38 (quoting *Durant v. United States*, 410 F.2d 689, 691 (1st Cir.1969)).

■ The holding in *Weaver* compels the conclusion that if the New Mexico legislature had increased Devine's minimum sentence without parole after Devine's offense, it would have run afoul of the ex post facto clause.[6] Such a change in the laws of New Mexico would have increased Devine's punishment by increasing the actual time he would have to spend in jail before becoming eligible for supervised re-

lease. Such a retroactive amplification of punishment is clearly forbidden.[7]

#### B.

On its face, the Supreme Court's language would seem to indicate that all principles governing ex post facto clause analysis must be applied to judicial actions through the due process clause:

"The *Ex Post Facto* Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government. But the principle on which the Clause is based—the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties—is fundamental to our concept of constitutional liberty. As such, that right is protected against judicial action by the Due Process Clause of the Fifth Amendment."

*Marks*, 430 U.S. at 191–92, 97 S.Ct. at 992–93.

Both major Supreme Court decisions on "judicial ex post facto" violations dealt with judicial decisions that made certain

---

6. The Court's recent decision in *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), bolsters this conclusion. Miller involved a challenge to retroactive application of new, stricter sentencing guidelines in Florida. The defendant's presumptive sentence was seven years under the new guidelines, where it would have been only three and one-half to four and one-half years under the old guidelines. *Id.* 107 S.Ct. at 2452. Because the purpose and effect of the law was to increase the rates of incarceration for certain offenders, the state's retroactive application of it constituted an ex post facto violation. *Id.* at 2452. *Weaver* and *Miller* read together point to effect on actual prison time as the decisive factor in evaluating the constitutionality of retroactively applied changes in parole and sentencing laws.

7. We recognize the ongoing dispute among the Courts of Appeals regarding the application of allegedly stricter guidelines for the granting of parole to prisoners whose offenses occurred while allegedly more lenient guidelines were in effect. Some circuits have held that applying such guidelines retroactively violates the ex post facto clause, because the guidelines have the effect of increasing prison time. *See United States ex rel. Forman v. McCall*, 709 F.2d 852, 857–62 (3d Cir.1983); *Shepard v. Taylor*, 556 F.2d 648, 654 (2d Cir.1977). The majority of Circuits (including the Tenth) have reasoned

that where guidelines merely channel the discretion of the parole authority, the guidelines do not constitute ex post facto laws because they do not directly disadvantage particular defendants. *See e.g., Resnick v. United States Parole Comm'n*, 835 F.2d 1297, 1300–01 (10th Cir. 1987); *Yamamoto v. United States Parole Comm'n*, 794 F.2d 1295, 1299–1300 (8th Cir. 1986) (per curiam); *Paschal v. Wainwright*, 738 F.2d 1173, 1179–80 (11th Cir.1984); *Warren v. United States Parole Comm'n*, 659 F.2d 183, 193–97 (D.C.Cir.1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982). The present case, however, falls outside the boundaries of this dispute. It is well accepted that, for ex post facto purposes, there is a critical distinction between a statute which establishes rules for the granting of parole once prisoners are eligible, as in the above cited cases, and one which straightforwardly delays the date certain prisoners will become eligible for parole, as in *Weaver* and this case. *See Warren*, 659 F.2d at 196 n. 56; *Breest v. Helgemoe*, 579 F.2d 95, 102 (1st Cir.), *cert. denied*, 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed. 2d 329 (1978).

The Fifth Circuit has held that the ex post facto clause does not apply to parole regulations because they are not "laws." *Sheary v. United States Parole Comm'n*, 822 F.2d 556, 558 (5th Cir.1987). We do not address this conclusion because we are dealing here with a statute, not a regulation.

conduct criminal which had before been legal. *See Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (state supreme court expanded statutory definition of trespass); *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (United States Supreme Court expanded scope of permissible definition of illegal obscenity). As we have noted in the legislative ex post facto context, however, the Court has indicated that retroactive curtailment of parole eligibility constitutes retroactive enhancement of punishment. *See supra* at 342–343 "The purposes behind the prohibition on *ex post facto* laws are twofold: to restrain legislatures and courts from arbitrary and vindictive action and to prevent prosecution and punishment without fair warning." *Rubino*, 845 F.2d at 1272 (*citing Miller*, 107 S.Ct. at 2451); *see Weaver*, 450 U.S. at 28–29, 101 S.Ct. at 963–64. In our view, it is potentially as arbitrary and vindictive to retroactively enhance punishment for particular conduct, as it is to make particular conduct criminal. The desire to require certain classes of offenders to spend more time in prison is indistinguishable from the desire to make certain past conduct criminal. It has its roots in the same phenomenon—increased disapproval of particular conduct; and it has the same effect—requiring individuals to suffer greater punishment than previously mandated. Similarly, it is as unfair to punish an individual severely when he was not given fair notice of the severity of punishment associated with an act, as it is to prosecute him without fair notice that the act is criminal.

The recent decision of the Fifth Circuit in *Rubino* is particularly instructive. A state prisoner filed a federal habeas petition claiming a violation of due process because of a "judicial ex post facto" decision. Subsequent to the petitioner's commission of the crime but prior to his conviction, the Texas Supreme Court had abandoned the "carving" doctrine, a common law rule peculiar to Texas which, in certain situations, prohibited prosecuting individuals for multiple offenses arising out of the same act or series of acts. This decision did not make conduct criminal which was previously permitted, but instead enhanced the degree of punishment to which certain offenders would be exposed for actions that violated multiple statutes. *Rubino*, 845 F.2d at 1274. The Fifth Circuit nevertheless found a potential[8] violation of due process. It based this decision on the applicability of the dual purposes of the ex post facto clause to courts and to actions enhancing punishment, *see id.* at 1272–73, pointing out that "the Supreme Court has held that the due process clause protects criminal defendants against action by the judiciary that would contravene the *ex post facto* clause if done by the legislature," *id.* at 1271 (*citing Marks*, 430 U.S. at 191–92, 97 S.Ct. at 992–93; *Bouie*, 378 U.S. at 353–54, 84 S.Ct. at 1702–03).

*Marks* and *Bouie* on their face make the ex post facto clause applicable to courts by way of the due process clause. We see no compelling reason why this application should be limited to the facts of those cases.[9] On the contrary, the underpinnings

---

**8.** The court certified to the Texas Supreme Court the issue of whether the petitioner's conduct would have fallen within the previous scope of the carving doctrine.

**9.** We are not persuaded to the contrary by the statement in *Lerner v. Gill*, 751 F.2d 450, 457 (1st Cir.), *cert. denied*, 472 U.S. 1010, 105 S.Ct. 2709, 86 L.Ed.2d 724 (1985), that the reasoning of *Bouie* was only of "tangential relevance" to that case. This broad dictum must be read in context. In *Lerner*, the minimum period of incarceration before parole eligibility was *reduced* from the 20 years that the statute prescribed at the time of the offense to 10 years by the time of sentencing. Lerner was given two consecutive life sentences, and the Attorney

General subsequently rendered an opinion that he would be eligible for parole in 10 years. Several years later, a new Attorney General opined that prisoners like Lerner were required by the parole statute to serve a minimum of 10 years for each life sentence unless the sentences were concurrent. The state supreme court agreed. The First Circuit reasoned that ex post facto analysis was not applicable because under any construction of the statute Lerner would not be punished more than the 20 years provided as the minimum at the time of his criminal conduct. In addition, the court held that the new interpretation of the 10 year statute was not unforeseeable. We conclude that the analysis in *Lerner* is inapplicable to the facts of the instant case.

of the ex post facto clause compel applying it full force to courts when they enhance punishment by directly delaying parole eligibility. Because retroactive restriction of parole eligibility enhances an offender's punishment, the decision of the New Mexico Supreme Court contravened the due process clause of the Fourteenth Amendment if it was unforeseeable.

## C.

█ The Supreme Court has not been overly helpful in indicating what constitutes an "unforeseeable" judicial expansion of criminal liability. The Court has stated only that a decision is unforeseeable if it is " 'unexpected and indefensible by reference to the law which *had been expressed* prior to the conduct in issue.' " *Bouie*, 378 U.S. at 354, 84 S.Ct. at 1703 (quoting *Hall, supra,* at 61) (emphasis added). It is evident from the facts and holding of *Bouie* that if a criminal statute is "narrow and precise" on its face, any judicial expansion of that statute beyond its own terms will be considered unforeseeable.[10] 378 U.S. at 352–53, 84 S.Ct. at 1701–02. *Marks* held that a court overruling its own precedent is unforeseeable for due process purposes. The Court applied this principle to itself and held that even when a plurality decision is overruled and the scope of illegal conduct expanded, the new broader definition cannot be made retroactive. *Marks,* 430 U.S. at 192–96, 97 S.Ct. at 993–95.

█ *Bouie* focused on whether the judicial decision was foreseeable in light of the "law which had been expressed prior to the conduct in issue." 378 U.S. at 354, 84 S.Ct. at 1703. Under this standard, we must hold that the decision of the New Mexico Supreme Court was unforeseeable, and that its retroactive application thereby violated due process. A defendant in Devine's shoes, deciding whether to plead guilty in December 1979 to an offense committed in August 1979, had no indication that a prisoner serving a life sentence was required

at that time to serve thirty years, rather than ten, without parole eligibility. The official compilation of the statutes of New Mexico stated that the mandatory prison term on a life sentence was ten years. The only indication to the contrary was an oblique reference in the compiler's notes that an inconsistent provision had been passed by the 1977 legislature. That provision was not codified, nor were its specific terms available to a reader of the New Mexico Statutes Annotated.

Even an in-depth inquiry by a dedicated and educated student of New Mexico law would have revealed nothing to foreshadow the New Mexico Supreme Court opinion. An examination of the two acts passed by the 1977 legislature, and the statute governing their respective stature in the official compilation of the laws of New Mexico, would have shown that because chapter 217, § 3 was signed into law by the governor after chapter 216, § 12, "it [is] presumed to be the law." N.M.Stat.Ann. § 12–1–8 (1978). Finally, an examination of the guidelines published by the New Mexico Parole Commission would have revealed the same thing, as they also contained the relevant text of chapter 217, § 3. *See* rec., vol. I, doc. 15, ex. H, at 41.

The general acceptance of the inefficacy of chapter 216, § 12 is further evidenced by the relevant actions of both the legislature and the attorneys prosecuting Devine. In 1980, the legislature enacted a new provision dealing with the parole of prisoners sentenced to life, mandating a minimum thirty-year term. The notes to that act's codification at section 31–21–10 state that "Laws 1980, ch. 28, § 1, repealed former 31–21–10 NMSA 1978, relating to parole authority and procedure, and enacted a new 31–21–10 NMSA 1978." The old section 31–21–10 was 1977 N.M.Laws ch. 217, § 3. It is evident that the New Mexico legislature considered chapter 217, § 3 to have sufficient force of law to warrant repealing by passage of another legislative

---

**10.** Some courts have attempted to flesh the standard out, holding for example that "Due Process requires that criminal statutes give fair warning to persons of ordinary intelligence of the proscribed conduct and the persons covered." *Buffo v. Graddick,* 742 F.2d 592, 595 (11th Cir. 1984).

act. Before the supreme court's decision in *Quintana,* the state did not argue for the application of chapter 216, § 12 to Devine, but for the new thirty-year minimum passed by the 1980 legislative session. *See* rec., vol. I, doc. 15, ex. G, at 3. Although there was controversy regarding which act to apply to Devine's parole status, until the supreme court's decision in *Quintana* there was universal agreement that 1977 N.M.Sess.Laws ch. 216, § 12 did not apply.

The court in *Quintana* justified its departure based on a two-tiered argument. First, it invoked the rule that a statute may not amend a law previously repealed by another statute:

> "We determine that the Legislature intended Chapter 216 to apply to persons sentenced for crimes committed after July 1, 1979, because Chapter 216 *repealed* the 1955 law whereas Chapter 217, approved after Chapter 216, only *amended* the 1955 law. It is not logical for the Legislature to repeal the law and then amend it."

*Quintana,* 668 P.2d at 1103. Feeling thus compelled to give chapter 216, § 12 effect, the court attempted to find a coherent structure in the two 1977 laws and the 1980 law:

> "We determine that Chapter 217, which had exactly the same parole eligibility as the 1955 law, applies to all inmates whose crimes were committed prior to July 1, 1979. Parole for inmates who committed crimes between July 1, 1979 and February 22, 1980, are governed by the provisions of Chapter 216. Parole for inmates who committed crimes on or after February 22, 1980, are governed by the 1980 law. No inmate who is sentenced for committing a crime after July 1, 1979, may be paroled before serving his full term unless confined for a capital life sentence, in which case the eligibility is thirty years."

*Id.* at 1104. The New Mexico court is of course free to apply its rules of statutory interpretation without federal review. The court may not, however, make its interpretations retroactive when they are unforeseeable.

The New Mexico court's decision in 1983 to make chapter 216 applicable to persons sentenced for crimes committed after July 1, 1979, was unforeseeable for two reasons. First, as discussed above, *Bouie* focused on the law *as expressed* at the time of the conduct at issue. More significant than any implication drawn from this language is the heavy emphasis on the fundamental importance "to our concept of constitutional liberty" of the "right to fair warning of that conduct which will give rise to criminal penalties." *Marks,* 430 U.S. at 191, 97 S.Ct. at 992; *see Miller,* 107 S.Ct. at 2451; *Weaver,* 450 U.S. at 28–29, 101 S.Ct. at 963–64; *Bouie,* 378 U.S. at 354–55, 84 S.Ct. at 1702–03; *see also Rabe v. Washington,* 405 U.S. 313, 315, 92 S.Ct. 993, 994, 31 L.Ed.2d 258 (1972) ("To avoid the constitutional vice of vagueness, it is necessary, at a minimum, that a state give fair notice that certain conduct is proscribed."). Even if its decision were fully supported by rules of statutory interpretation, we cannot agree that a state court may employ relatively obscure legal techniques to add twenty years of prison time to the minimum penalty set down in every widely disseminated and published official source of law. Allowing such an action would sap the "fair warning" requirement of all substance. Irrespective of the actual mechanics of the decision in *Quintana,* therefore, that decision was unforeseeable in light of all published sources of New Mexico law.

Second, it is doubtful whether Devine, or more realistically his attorney, would have been able to anticipate the New Mexico court's decision even had he carefully studied less widely available sources of law. The *Quintana* court held the provisions of chapter 216, § 12 effective as of July 1, 1979. This result was unforeseeable beforehand because of other provisions of chapter 216. Section 1 provided that N.M. Stat.Ann. §§ 40A–29–26 through 40A–29–34 "may be cited as the 'Criminal Sentencing Act.'" Sections 1–10 of chapter 216 were codified at those portions of the New Mexico Statutes Annotated. Section 19 of chapter 216 further provided that "[t]he effective date of the provisions of the Criminal Sentencing Act is July 1, 1979." Thus, sections 1–10 of chapter 216 were explicitly

made effective July 1, 1979. The most straightforward inference to be drawn from this provision is that the remaining sections, including section 12, had no specific effective date.[11] Thus, even deemphasizing the effect of the rules governing compilation of statutes, the holding that the intent of the legislature was to make chapter 216, § 12 effective July 1, 1979, was not immediately foreseeable.

### IV.

Because the decision of the New Mexico Supreme Court was unforeseeable and retroactively enhanced Devine's punishment, it violated the due process clause. Holding Devine without providing him a hearing on whether he should be granted parole on the date he would receive such a hearing in accordance with 1977 N.M.Sess. Laws ch. 217, § 3 would therefore be unconstitutional. Accordingly, the judgment below is reversed and remanded to the district court with instructions that the writ should issue, and Devine should be ordered released, unless he is provided a parole hearing after service of ten years imprisonment less any good time credit that may be applicable.

---

**11.** The New Mexico constitution indicates that laws passed without specific effective dates go into effect ninety days after the end of the legislative session.