**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CLIFTON SKIDGEL,

　　　　　Petitioner - Appellant,

　　v.

JOE WILLIAMS, Warden;
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

　　　　　Respondents - Appellees.

No. 98-2034

(D. New Mexico)

(D.C. No. 96-CIV-190-BB)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **TACHA**, and **EBEL**, Circuit Judges.

　　　　Clifton Skidgel, a New Mexico state prisoner, pleaded guilty to four counts

of first degree felony murder, and he received four life sentences, with the

sentences on counts I and II to run consecutively, and the sentences on counts III

and IV to run concurrently with the sentence on count I.  In this petition for

federal habeas corpus relief under 28 U.S.C. § 2254, Skidgel alleges that 1) he

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

was deprived of due process by the trial court's failure to hold a competency hearing, and by its actions in convicting and sentencing him when he was, in fact, incompetent; 2) his guilty plea was involuntary; and 3) he received ineffective assistance of counsel.  Following an evidentiary hearing, the district court denied relief and dismissed the petition.  Skidgel now seeks a certificate of appealability in order to appeal that dismissal.  Because Skidgel has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), we deny his request for a certificate of appealability and dismiss the appeal.


**BACKGROUND**

According to New Mexico state court records, early in the morning of September 17, 1979, Skidgel methodically (moving quickly, in military fashion, from room to room in his house) shot and killed his wife and three of his stepchildren, and he wounded a fourth stepchild.  R. Vol. IV at 43.  He then asked a neighbor to call the police while he waited outside.  After the police arrived and advised Skidgel of his Miranda rights, he gave a full confession at the scene.  Id.

Thereafter, Skidgel was charged with four counts of first degree murder and one count of attempted murder, and a contract public defender, Grace Duran, was appointed to represent him.  Defense counsel moved for a competency

hearing; Skidgel was referred to a forensic psychologist who examined him to determine "the prominent features of [his] personality" and who also evaluated him "in terms of current competency" and "mental state at the time of the offenses." Addendum to Appellant's Br., Tr. of Proceedings on May 13, 1980 ("Sentencing Tr.") at 7-8. After receiving the psychologist's report, defense counsel filed an abandonment of the motion for a competency hearing, and initiated plea negotiations. See Tr. of Proceedings, May 1, 1985, at 3; R. Vol. IV at 46. In response to the court's question regarding competency at the plea hearing, counsel replied that Skidgel had been found competent to stand trial. Addendum to Appellant's Br., Tr. of Proceedings on April 2, 1980 ("Plea Tr.") at 20.

At the time that Skidgel entered his plea, the court questioned him regarding any physical or mental health problems he might be having, and Skidgel replied that he had no problems, and that his mental condition was "[a]verage." Id. at 19. The court further inquired whether Skidgel understood the nature of the proceedings, to which Skidgel answered, "Yes." Id. at 19-20. The court also specifically asked Skidgel whether he understood that the terms of his sentence were entirely up to the court, and Skidgel answered in the affirmative. Id. at 5, 7. Additionally, the court asked whether any promises had been made other than those set forth in the plea agreement, and Skidgel responded, "No." Id. at 5-6.

Finally, the court ascertained from Skidgel that his plea was a free and voluntary act, and that he was satisfied with the representation of his attorney.

At the subsequent sentencing hearing, the court indicated that it had reviewed the presentence report, the forensic evaluation, and letters from members of Skidgel's family. Sentencing Tr. at 23, 28. The forensic psychologist testified regarding his evaluation, emphasizing aspects of and causes for what he termed Skidgel's "personality disorder" and the extreme stress that Skidgel felt at the time of the offense.[1] Sent. Tr. at 9-10, 16-17. Although defense counsel argued for concurrent sentences, based in part on the forensic testimony and on the fact that Skidgel had fully cooperated with the police, id. at

---

[1]The psychologist testified that Skidgel's intelligence was slightly above average, Sentencing Tr. at 8, and that Skidgel had good command of vocabulary and good abstract reasoning abilities. id. at 9. However, he testified that Skidgel did display a diagnosable mental illness which he termed a "personality disorder," id. at 9-10, which he further characterized as not significant enough either to "disturb a person's functioning in terms of their day-to-day existence," or to affect the "ability to perceive reality in a fairly accurate way." id. at 10.

According to the psychologist's testimony, the primary manifestations of Skidgel's personality disorder consisted of his maladaptive behavior, overintensity (although not to a degree that reality testing or reality function was grossly disturbed), inability to express hostility, withdrawal from others, excessive drinking, low self-esteem, and poor ability to tolerate stress. Id. at 10-11. The psychologist also noted Skidgel's "low-level sort of suspiciousness," his tendency "to blame others," and his significant underlying hostility. Id. at 13. In response to specific questioning by the court, the psychologist stated his opinion that Skidgel was not suffering from any psychosis. Id. at 22. He also opined that Skidgel was able to tell the difference between right and wrong at the time of the murders, and that he knew the nature and consequences of his act. Id. at 23.

-4-

24, the court, after noting its thorough consideration of the case, determined to make two of the sentences consecutive.

No appeal was taken. However, some fifteen months after he was sentenced, in August 1981, Skidgel filed a motion to vacate or set aside an illegal sentence in state district court. As grounds, he stated that he had entered into the plea agreement based on information from his attorney that "the minimum sentence of 10 years would be served on each count for a possible total sentence of 40 years, before incurring parole eligibility." R. Vol. IV at 82. His complaint in this motion was that "once incarcerated . . . he received a 'Time-Slip' claiming that [he] must serve 30 years on each count of First Degree Murder before being eligible for Parole consideration."[2]  Id.  Thus, he argued that he had received ineffective assistance of counsel. Id. at 83. After the motion was denied, in

_____

[2]At the time Skidgel filed his motion, New Mexico had two contradictory statutes governing parole eligibility for persons serving life sentences for crimes committed before February 22, 1980. One statute purported to require that the inmate serve 30 years before parole eligibility, while the other purported to require that only 10 years be served. In 1983, the New Mexico Supreme Court appeared to settle the issue, ruling that an inmate who was serving a life sentence for a crime committed between July 1, 1979, and February 22, 1980, must serve 30 years of his sentence before becoming eligible for parole. Quintana v. New Mexico Dept. of Corrections, 668 P.2d 1101, 1104 (N.M. 1983). However, in a subsequent federal habeas action involving the same case, we held that the New Mexico Supreme Court's ruling constituted a retroactive enhancement of the inmate's punishment in violation of the Due Process Clause. Devine v. New Mexico Dept. of Corrections, 866 F.2d 339, 347 (10th Cir. 1989). Consequently, we held that the inmate must be provided a parole hearing "after service of ten years imprisonment less any good time credit that may be applicable." Id.

December 1981, Skidgel filed his first habeas petition in state court, again alleging that he had been promised a lesser sentence. R. Vol. I, Tab 12, Exs. E, F. In August 1985, after conducting an evidentiary hearing, the state district court issued its findings of fact and conclusions of law. Id., Ex. I. The court found that Skidgel's defense counsel had advised him that he would be eligible for parole after serving ten years on each life sentence. Id., Tab 12, Ex. I at 3. However, the court also found that any representation regarding parole eligibility was not relevant, because "Skidgel pled guilty without reliance on what the applicable parole term was."[3] Id.[4] Apparently applying the rule set forth in Quintana v. New Mexico Dept. of Corrections, 668 P.2d 1101, 1104 (N.M. 1983),

---

[3]In its preliminary findings, the court specifically states that "Clifton Skidgel told Grace Duran between September 1979 and April 1980, that he wished to plead guilty to the charges and did not care what the consequences were." R. Vol. I, Tab 12, Ex. I at 2. The court also recites the substance of two letters that Skidgel sent his attorney, in which Skidgel indicated that he "'belonged in jail'" and wanted to plead guilty. Id. at 1. Additionally, the court noted another letter, written in November 1979, in which Skidgel requested that Duran terminate any further psychological testing, and that she move for trial at the earliest possible date. Id. at 2.

[4]Following the entry of its order, the court wrote a letter to Skidgel's counsel which clarified some of its findings. R. Vol. I, Doc. 12, Ex. J. That letter acknowledges the court's understanding that Skidgel's counsel had advised Skidgel about parole eligibility at some time prior to Skidgel's signing the plea agreement. Notwithstanding its reconsideration of that fact, the court did not conclude that it was necessary to modify its finding that the guilty plea was entered into without reliance on any such statements. See id.

the court concluded that Skidgel would be eligible for parole after serving sixty years.[5]  Id. at 4.

Skidgel filed another state habeas petition in 1989, which was summarily dismissed.  In 1991, he filed another petition, alleging that his counsel had promised him "good time" against his life sentence.[6]  That petition was also denied.  Finally, in 1995, he filed his final state court petition, in which he claimed he had been incompetent at the time he had been sentenced.  That petition was denied as procedurally barred.

Having fully exhausted his state court remedies, Skidgel filed a pro se § 2254 petition in federal court, claiming that he had been incompetent when he entered his plea and received his sentence, and that his plea, which had been based on incorrect information regarding good time credits, was involuntary.  As to both issues, he claimed ineffective assistance of counsel.  The state responded, arguing that Skidgel was procedurally barred from bringing his claims.[7]  The case

---

[5]Skidgel's filings in the district court suggest that New Mexico revised its policy following our decision in Devine, 866 F.2d at 347, so that Skidgel's current parole eligibility is set at 10 years for each of the consecutive life sentences.  See R. Vol. I, Tab 38 at ¶ 4.

[6]Skidgel had actually been receiving good time credits until 1988, when they were revoked based on a New Mexico Attorney General's Opinion that such credit was not legally authorized.

[7]On appeal, the state does not dispute the magistrate judge's conclusion, adopted by the district court, that the issues are not barred.

was referred to a magistrate judge, who set an evidentiary hearing and who appointed a Federal Public Defender to represent Skidgel.[8]  R. Vol. I, Tab 15. Following the evidentiary hearing, the magistrate judge found ample evidence that Skidgel had been competent when he entered his plea, and that Skidgel had failed to present sufficient evidence that he was not competent, and he also found that Duran's advice regarding good time credit, which was based on the actual department of corrections practice, did not constitute ineffectiveness.  The magistrate judge additionally found that there had been no secret deals or promises which rendered Skidgel's plea involuntary.[9]

---

[8]The federal public defender has represented Skidgel in all subsequent stages of this action, including this appeal.

[9]The thrust of this finding addressed Skidgel's claim, which he made for the first time at the evidentiary hearing, that defense counsel had promised him that all his sentences would be concurrent, and had told him to lie when the judge asked if any promises had been made.  The magistrate judge found the testimony incredible.  Skidgel does not continue to argue this claim on appeal, and in any event, we note that such a claim contradicts his pleadings in state court.  See R. Vol. IV at 82 (specifically noting counsel's advice that Skidgel might serve 10 years on each life sentence, for a total of 40 years before becoming eligible for parole).

## DISCUSSION

### I.     Competency

A defendant is competent to enter a guilty plea if he has the "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,'" and he has a rational and factual understanding of the proceedings against him.  See Godinez v. Moran, 509 U.S. 389, 396-99 (1993) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam), and applying the Dusky standard for determining competency to stand trial to the determination of competency to enter a guilty plea).

As his first claim of error, Skidgel complains the state court violated his due process rights by failing to conduct a competency hearing in order to determine whether he was competent to enter his guilty plea and to be sentenced. In addressing such claims on federal habeas review, we must determine "'whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to [the defendant's] competency to stand trial.'"  Coleman v. Saffle, 912 F.2d 1217, 1226 (10th Cir. 1990) (quoting United States v. Crews, 781 F.2d 826, 833 (10th Cir. 1986), and further noting that the evidence must be sufficient to create a "bona fide doubt" as to competency; it is not enough that the issue simply be raised).  As the Supreme Court has stated, "'evidence of a defendant's

irrational behavior, his demeanor at [proceedings], and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient'." Castro v. Ward, 138 F.3d 810, 818 (10th Cir. 1998) (quoting Drope v. Missouri, 420 U.S. 162, 180 (1975)). Whether there was evidence that created a bona fide doubt about the defendant's competence is a mixed question of fact and law which we review de novo. See United States v. Williams, 113 F.3d 1155, 1160 (10th Cir. 1997) (conducting a "comprehensive" review of the issue).

Skidgel argues that the following factors should have triggered doubt as to his competency to plead guilty: 1) the bizarre nature of his crime; 2) his irrational behavior as demonstrated by his insistence on pleading guilty without regard to the consequences; and 3) the fact that, five years earlier when he was in the Navy, Skidgel had been treated by a psychiatrist, although he never finished the therapy.[10] In similar cases, we have rejected such factors as insufficient to raise the requisite threshold doubt. Thus, the horrific nature of a crime does not necessarily equate with mental incompetence. See Nguyen v. Reynolds, 131 F.3d 1340, 1346 (10th Cir. 1997). Nor does one course of therapy with a psychiatrist,

---

[10]Skidgel argues other factors, which were evident from the psychologist's evaluation. However, that information was not available to the judge at the time that the plea was entered.

which occurred several years earlier, and which apparently did not even address competency, suggest any present incompetence.  Compare United States v. Crews, 781 F.2d 826, 833 (10th Cir. 1986) (finding the fact that defendant had been a hospitalized mental patient insufficient to raise doubt requiring hearing), with Sena v. New Mexico State Prison, 109 F.3d 652, 655 (10th Cir. 1997) (finding substantial doubt raised by prior adjudication of incompetence which gave rise to "a rebuttable presumption of continued incompetence").

Although we recognize that such factors must be considered cumulatively, in the circumstances of this case, the coexistence of these two factors still fails to raise the requisite doubt, especially since Skidgel appears to have comported himself appropriately in all proceedings.[11]  Under the circumstances, the judge reasonably relied on counsel's response that Skidgel had been found competent; that response merely confirmed the unremarkable appearance of the matter. Finally, noting that Skidgel raises no defenses to the charges, we are wholly unpersuaded by the argument that his choice to plead guilty and to accept the consequences of his act demonstrated irrational behavior.  Cf. Agan v. Dugger, 835 F.2d 1337, 1339-40 (11th Cir. 1987) (finding doubt raised by inmate's history

---

[11]The record certainly suggests no outward indication of any problems with Skidgel's behavior or responses or understanding, nor does Skidgel point to any.

of serious mental problems, and also noting his claim of defenses and actual innocence despite his plea).

Moreover, although the extent of Skidgel's personality disorder was documented by the time of the sentencing hearing, the psychologist specifically testified that Skidgel's disorder was not significant enough either to "disturb [his] functioning in terms of [his] day to day existence," or to affect his "ability to perceive reality in a fairly accurate way." Sentencing Tr. at 10. Nonetheless, Skidgel argues that we should ignore the express testimony, and that we should draw a negative inference from the absence of any specific finding as to competency, and conclude that the psychologist's report should have raised doubts about Skidgel's competence. We disagree. While the issue was raised, nothing in the record, either alone or cumulatively, creates a bona fide doubt as to Skidgel's competency so as to have required the judge to order a competency hearing.

Skidgel also contends that he was in fact incompetent at the time of his plea and sentencing. This contention raises a substantive due process claim which differs from the procedural due process claim that he makes regarding the trial judge's failure to conduct a competency hearing. See Cooper v. Oklahoma, 517 U.S. 348, 354 (1996). In this case, the federal magistrate judge conducted a nunc pro tunc hearing on the issue of competency. At the time, the magistrate judge

did not have the benefit of our direction as to the threshold showing that a habeas petitioner must make in order to obtain such a hearing. See Nguyen, 131 F.3d at 1346 (noting that, in order to obtain a nunc pro tunc evidentiary hearing in district court on the issue of competency to enter a guilty plea, a federal habeas petitioner must present clear and convincing evidence to raise a threshold doubt about his competency). Our conclusion that there was insufficient evidence to raise a bona fide doubt so as to require the trial judge to order a competency hearing obviously translates to a conclusion that Skidgel's evidence fails to meet the threshold requirement which would have entitled him to a nunc pro tunc hearing.

Nonetheless, given the circumstance that a hearing was actually conducted, Skidgel was required to prove his incompetency by a preponderance of the evidence. See Moody v. Johnson, 139 F.3d 477, 481 (5th Cir. 1998); Crail v. United States, 430 F.2d 459, 460 (10th Cir. 1970); see also Cooper, 517 U.S. at 355-362 (1996) (noting the consistent historical application of this standard to the proof of incompetency). On appeal, we review the magistrate judge's findings of fact for clear error. See United States v. Boigegrain, 155 F.3d 1181, 1189 (10th Cir. 1998). In this case, the magistrate judge heard testimony from the psychologist who wrote the original report and testified at the sentencing hearing. The psychologist opined that Skidgel had been competent at the relevant times, and he further testified that he would have noted any contrary conclusion in his

report. R. Vol. II at 6-20. Reciting such testimony, as well as the conflicting testimony of Skidgel and his counsel, the magistrate judge found "based on the record before me and the testimony of the witnesses, and having observed the demeanor of the witnesses, I find that there was ample evidence that Mr. Skidgel was competent to enter his guilty plea." R. Vol. I, Tab 46 at 8. The magistrate judge further specified that he "neither saw nor heard any evidence that Mr. Skidgel was unable to understand the proceedings or to assist his counsel at that time." Those findings, based on the evidence presented, are not clearly erroneous.

## II. Ineffectiveness

Finally, Skidgel raises two claims alleging ineffective assistance of counsel. First he contends that his counsel's abandonment of the motion for a competency hearing constituted ineffectiveness. Second, he contends that his counsel's incorrect advice regarding his eligibility for good time credits constituted ineffectiveness.

To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness" and was so prejudicial "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). The defendant/petitioner bears the burden of proving both deficient performance and prejudice. See Brecheen v. Reynolds, 41 F.3d 1343, 1365 (10th Cir. 1994). However, in some cases we may proceed directly to the issue of prejudice. See United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993) ("The Supreme Court has observed that often it may be easier to dispose of an ineffectiveness claim for lack of prejudice than to determine whether the alleged errors were legally deficient.")

In this case, the district court adopted the magistrate judge's findings and conclusions that Skidgel had failed to prove ineffectiveness on both claims. As to the competency hearing, the district court essentially concluded that Skidgel had failed to establish any entitlement to a hearing, which necessarily compels the conclusion that his counsel was not ineffective in abandoning the motion. As to the advice regarding parole, the district court concluded that Skidgel's advice, though incorrect, did not fall below an objective standard of reasonableness. The district court's finding that counsel was not ineffective is a mixed question of fact and law which we review de novo. United States v. Blackwell, 127 F.3d 947, 955 (10th Cir. 1997). However, the factual findings that underlie the ultimate finding are reviewed only for clear error. Id.

Inasmuch as Skidgel has failed to raise any bona fide doubt as to his competency, we agree that he has not carried his burden of demonstrating prejudice, *i.e.*, that the result of the proceeding would have been different. Similarly, we agree with the district court's ultimate conclusion regarding the advice as to good time credits, although we approach the issue differently. As the state record demonstrates, following an evidentiary hearing in an earlier state court proceeding the state court found that any incorrect information which his counsel may have given him regarding parole was irrelevant to Skidgel's decision to plead guilty, and determined that "Skidgel pled guilty without reliance on what the applicable parole term was."[12]  R. Vol. I, Tab 12, Ex. I at 3.  Pursuant to 28 U.S.C. § 2254(e)(1), this "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  In this case, Skidgel has wholly failed to present such evidence.  Consequently, he has failed to demonstrate any prejudice from any incorrect advice he may have received regarding entitlement to good time credits.

---

[12]Although we understand that the state court was not specifically addressing the issue of good time credits, its conclusion necessarily encompasses all information regarding parole.

Inasmuch as Skidgel has failed to make a "substantial showing of the denial of a constitutional right," we DENY his request for a certificate of appealability and DISMISS this appeal.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge