IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-019

Filing Date: May 13, 2013

Docket No. 33,811

CLIFTON SKIDGEL,

 Petitioner,

v.

TIMOTHY B. HATCH, Warden,

 Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Lisa C. Schultz, District Judge

Clifton Skidgel, Pro Se
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Santa Fe, NM

for Respondent

OPINION

DANIELS, Justice.

{1} For more than thirty years, Petitioner Clifton Skidgel has been trying to get the attention of our state courts to correct his parole eligibility for the life sentences imposed on him after he pleaded guilty to four counts of first-degree murder on April 2, 1980. He now seeks a writ of certiorari from this Court to review the district court's summary dismissal of his most recent petition for writ of habeas corpus. We grant certiorari on the issue of the district court's order that Petitioner must serve thirty instead of ten years before consideration for parole, which the court ordered in reliance on our opinion in *Quintana v. New Mexico Department of Corrections*, 100 N.M. 224, 668 P.2d 1101 (1983); and we deny

certiorari on all remaining issues. We expressly overrule *Quintana* to the extent that it is inconsistent with *Devine v. New Mexico Department of Corrections*, 866 F.2d 339 (10th Cir. 1989), reverse the district court on Petitioner's parole eligibility, and order the district court to issue a writ of habeas corpus providing that Petitioner shall become eligible for parole consideration upon the completion of ten years of imprisonment on the life sentence he is now serving.

**BACKGROUND**

**{2}**     Petitioner is serving the second of two consecutive life sentences for the first-degree murders of his wife and three of his stepchildren. According to documents in the record, Petitioner shot his wife and four stepchildren in their home on September 17, 1979. One of his stepchildren survived the shooting. The State charged Petitioner with four counts of first- degree murder and one count of attempted murder. In exchange for his plea of guilty to the four murder charges, the State dismissed the attempted murder charge. The district court sentenced Petitioner on May 14, 1980, to four life sentences, ordering that three of the sentences would run concurrent with each other and consecutive to the fourth, for an effective sentence of two consecutive life terms.

**{3}**     Fifteen months after Petitioner was sentenced, he filed his first motion for postconviction relief to correct what he argued was an illegal sentence. He claimed that his attorney had advised him that he would be eligible for parole after serving ten years on each of his two consecutive life sentences. Once incarcerated, however, Petitioner received a "time slip" informing him that he would not be eligible for parole until he served thirty years on each life sentence. The effect was to extend what Petitioner understood to be the minimum length of his incarceration from twenty years to sixty. He claimed that the discrepancy rendered his plea bargain "involuntary" and that his attorney's incorrect advice amounted to ineffective assistance of counsel. The district court denied that motion in 1981.

**{4}**     Over the course of the next eight years, Petitioner raised this discrepancy issue with the district court three more times without success. His first effort was in 1983, when he requested relief on the basis of "new evidence," which consisted of postsentencing correspondence with his attorney advising him and his family that he would be eligible for parole in twenty years. For reasons that are unclear from the record, Petitioner abandoned the 1983 attempt shortly before he was to appear for an evidentiary hearing.

**{5}**     He tried again in 1985 with a petition for a writ of habeas corpus. The district court granted Petitioner an evidentiary hearing at which his attorney testified that she had advised him during the course of his plea negotiations, based on her understanding of the law at that time, that a person sentenced to life in prison would be eligible for parole after ten years. The district court denied the petition, concluding that Petitioner did not rely on his attorney's advice when he pleaded guilty to four counts of first-degree murder. The district court further concluded that "[t]he parole eligibility date for [Petitioner's] two consecutive life sentences is sixty years."

**{6}** The last in this series of attempts was in 1989, when he again petitioned for a writ of habeas corpus and raised the incongruity of his counsel's advice and his ultimate parole eligibility. The district court summarily dismissed the 1989 petition on a technicality, citing Petitioner's failure to name the proper respondent.

**{7}** Petitioner made two additional postconviction challenges, in 1991 and 1995, on grounds related to his competency, and the district court denied both. This Court denied certiorari review of those denials, and Petitioner fared no better on these issues in federal court. *See Skidgel v. Williams*, 172 F.3d 63, at *1 (10th Cir. 1999) (unpublished) (denying federal habeas corpus relief).

**{8}** This brings us to the present petition—filed over thirty years after his initial incarceration—in which Petitioner again challenges the timing of his eligibility for parole. This is the first time Petitioner has presented this Court with the issue of his parole eligibility, and we agree that he is entitled to relief on that ground.

**ANALYSIS**

**Legislative History**

**{9}** This Court previously has encountered confusion about the appropriate length of a life sentence for someone convicted of committing a capital crime that occurred in the latter half of 1979. In *Quintana*, we addressed the claim of a defendant sentenced to a life term for a crime he committed during that same period. 100 N.M. at 225, 668 P.2d at 1102. We explained that the confusion for capital offenders arose from a series of conflicting laws passed by the Legislature that affected the period of incarceration such an individual must serve before becoming eligible for parole. *Id.* at 226-27, 668 P.2d at 1103-04.

**{10}** Prior to 1977, NMSA 1953, Section 41-17-24 (1955) provided that a person sentenced to life imprisonment became eligible for parole consideration after serving ten years. *See Quintana*, 100 N.M. at 226, 668 P.2d at 1103. But in 1977, the Legislature passed two bills—both on the same day—with conflicting provisions governing parole eligibility for a life sentence. The first 1977 bill repealed Section 41-17-24 and established a new, thirty-year minimum term of imprisonment for a life sentence; that law had a postponed effective date of July 1, 1979. *See Quintana*, 100 N.M. at 226, 668 P.2d at 1103 (citing 1977 N.M. Laws, ch. 216). The second 1977 bill amended Section 41-17-24 in various other ways but left the ten-year period in Section 41-17-24 intact; this second law would have had an effective date of June 21, 1977, ninety days after the March 19, 1977, adjournment of the 1977 Legislative session, by the terms of Article IV, Section 23 of the New Mexico Constitution. *See Quintana*, 100 N.M. at 226, 668 P.2d at 1103 (citing 1977 N.M. Laws, ch. 217).

**{11}** Compounding the confusion, the 1978 recompilation of the New Mexico Statutes codified only the second bill at NMSA 1978, Section 31-21-10 (1977), and simply referred

to the first bill in the compiler's annotations without including its text. *See Devine*, 866 F.2d at 340-41. Thus, Subsection D(4) of the statute that appeared in the official compilation continued to provide that a person sentenced to life in prison was eligible for parole after serving ten years.

**{12}** Such was the status until February 22, 1980, when the Legislature repealed the newly recodified Section 31-21-10 in its entirety and replaced it with a new statute that prescribed a thirty-year period of imprisonment for a life sentence before eligibility for parole. *See Quintana*, 100 N.M. at 226, 668 P.2d at 1103. The Legislature made the 1980 statute effective immediately and purported to make it apply retroactively to all crimes committed on or after July 1, 1979. *See id.*

**{13}** These dates are critical in this case because Petitioner's crimes were committed on September 17, 1979, and he was sentenced on May 14, 1980. Thus, Petitioner was sentenced just after the 1980 law went into effect for crimes that he committed after the retroactive date of July 1, 1979.

**Conflicting State and Federal Holdings**

**{14}** In *Quintana*, we held that Andrew James Devine, a defendant serving a life sentence under circumstances substantially identical to Petitioner's, would not be eligible for parole until he had served thirty years, rather than ten years as provided by prior law. 100 N.M. at 227, 668 P.2d at 1104. We reasoned that, because the first bill *repealed* the prior sentencing statute and replaced it with a new thirty-year term of imprisonment, the second bill that *amended* the prior statute was ineffective; in essence, there was nothing for the second bill to amend. *See id.* at 226-27, 668 P.2d at 1103-04. Our opinion is not entirely clear about the fate of the second bill—the law published in the 1978 recompilation of our statutes—but it seems that we concluded that it was never effective. *See Quintana*, 100 N.M. at 226, 668 P.2d at 1103. Instead, we held that the law regarding parole eligibility remained unchanged until the law the Legislature passed first became effective on July 1, 1979, as the Legislature originally provided. *See* 100 N.M. at 227, 668 P.2d at 1104 (holding that parole eligibility for an "inmate . . . sentenced for committing a crime after July 1, 1979, [and] serving . . . a capital life sentence . . . is thirty years").

**{15}** Some years later, the United States Court of Appeals for the Tenth Circuit granted a federal writ of habeas corpus to Andrew James Devine. *See Devine*, 866 F.2d at 339. The Tenth Circuit held that our reasoning and holding in *Quintana* were "unforeseeable and retroactively enhanced Devine's punishment," in violation of ex post facto principles, and therefore violated Devine's federal due process rights. *Id.* at 347. The Tenth Circuit ordered Devine released unless he was provided a parole hearing after serving ten years in prison. *Id.* Thus, *Devine* effectively overruled our retroactive interpretation of New Mexico's parole eligibility laws in *Quintana* as a matter of federal constitutional law. *Cf. State v. Ordunez*, 2012-NMSC-024, ¶¶ 1-2, 19, 283 P.3d 282 (reviewing ex post facto considerations in parole and probation eligibility cases and holding that retroactive application of a statute reducing

4

sentence credit for time served on probation constitutes ex post facto punishment).

**{16}** We have acknowledged previously that *Devine* undid our holding in *Quintana*, *see State v. Smith*, 2004-NMSC-032, ¶ 29, 136 N.M. 372, 98 P.3d 1022, although the most widely used legal research services fail to warn users that *Quintana* retains little, if any, precedential value. To avoid any further confusion, we hereby expressly overrule *Quintana* to the extent it is inconsistent with *Devine*, in recognition of the supremacy of the federal court ruling. *See* U.S. Const. art. VI, clause 2.

**Disposition of This Petition**

**{17}** The State's responsive filing in this Court agrees with Petitioner that the district court erroneously relied on *Quintana* and requests that we "grant the Petition and . . . such other and further relief this Court deems just and proper." We agree with the State's candid concession. The rule of law that requires Petitioner be held accountable for his crimes also requires that the executive and judicial branches of the state comply with the rule of law in administering his punishment.

**{18}** The only remaining question concerns the scope of the remedy that this Court should grant to Petitioner. The State suggests that the relief required by *Devine* is based on the parole procedure under the statute that was in effect at the time of Petitioner's crimes. We agree. We therefore reverse the district court's denial of the petition for writ of habeas corpus and remand with instructions to issue a writ clarifying that Petitioner shall be eligible for parole for his second life sentence upon the completion of ten years of that sentence. It appears from the record that Petitioner was granted parole on his first three concurrent life sentences on September 24, 2003, and that he accepted the conditions of his parole on September 30, 2003, effective when service of his final life sentence commenced. If our calculation is correct, it appears that Petitioner will become eligible for a parole hearing on his current and final sentence on September 30, 2013.

**{19}** Whether to grant parole to Petitioner at that time is not for this Court to decide. We note that the circumstances under which Petitioner was granted parole on his first life sentence are not clear from the record and briefing before us. It appears that he was paroled after serving approximately twenty-four years of that sentence, a possible result of the Tenth Circuit's holding in *Devine*. *See Skidgel*, 172 F.3d 63 at *2 n.5 ("Skidgel's filings in the district court suggest that New Mexico revised its policy following our decision in *Devine* so that Skidgel's current parole eligibility is set at 10 years for each of the consecutive life sentences." (internal citation omitted)). Rather than rely on speculation, we write to ensure that neither the district court's order in this case nor our holding in *Quintana* can be resurrected to further affect Petitioner or any other person similarly situated.

**CONCLUSION**

**{20}** We grant the petition for certiorari on the issue of the district court's reliance on

*Quintana*, reverse the district court's summary dismissal on that issue, and remand with instructions to issue a writ of habeas corpus ordering that Petitioner's eligibility for a parole hearing accrue upon the completion of ten years of service on his current life sentence.

**{21}   IT IS SO ORDERED.**

---
_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**BARBARA J. VIGIL, Justice**

**Topic Index for *Skidgel v. Hatch*, No. 33,811**

**APPEAL AND ERROR**
Remand

**ATTORNEYS**
Effective Assistance of Counsel

**CONSTITUTIONAL LAW**
Due Process
Ex Post Facto

**CRIMINAL LAW**
Homicide

**CRIMINAL PROCEDURE**
Parole
Plea and Plea Bargaining
Sentencing
Writ of Habeas Corpus

**REMEDIES**
Writ of Habeas Corpus

**STATUTES**
Interpretation
Legislative Intent