2004-NMCA-026

85 P.3d 804

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

Kathleen SMITH, Defendant–Appellant,

State of New Mexico, Plaintiff–Appellee,

v.

Roy Gonzales, Defendant–Appellant,

State of New Mexico, Plaintiff–Appellee,

v.

Richard Montoya, Defendant–Appellant.

Nos. 24,253, 24,254, 24,258.

Court of Appeals of New Mexico.

Jan. 12, 2004.

Certiorari Granted, No. 28,477,
Feb. 16, 2004.

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Plaintiff–Appellee.

John B. Bigelow, Chief Public Defender, Sue A. Herrmann, Assistant Appellate Defender, Santa Fe, NM, for Defendants–Appellants.

*OPINION*

KENNEDY, Judge.

{1} In these three consolidated appeals, we consider the effect of successive amendments to the driving while under the influence of liquor (DWI) statute on a felony DWI sentencing. *See* NMSA 1978, § 66–8–102 (1953, as amended through 2003). We hold that the last amendment of the statute that was enacted by the legislature governs the sentencing of Defendants herein, and accordingly reverse and remand for resentencing under the proper statute.

## BACKGROUND

{2} On March 19, 2003, HB 250, 2003 N.M. Laws Ch. 51, became law when signed by the Governor pursuant to its emergency clause. This law did not change the existing provision of Section 66–8–102(G).

{3} On March 28, 2003, the Governor signed into effect HB 117, 2003 N.M. Laws Ch. 90, § 3, that extensively amended the sentencing provisions of the DWI statute by increasing the penalties for felony offenses for those who have committed four through seven offenses. Section 66–8–102. The law contained an emergency clause, making it effective upon its passage and signature by the Governor on March 28, 2003.

{4} On April 5, 2003, the Governor signed another amendment to Section 66–8–102. In HB 278, the Legislature amended Section 66–8–102(G) yet again, eliminating the amendments that HB 117 created as subsections (H) through (J), and returning felony DWI sentencing to its original language. 2003 N.M. Laws Ch. 164 § 10. This amendment contained no emergency clause and became law on July 1, 2003. This is the law currently appearing in New Mexico Statutes Annotated.

{5} This case comes to the Court pursuant to its summary calendar disposition. We issue this formal opinion for two reasons: (1) the issue presented is clearly governed by existing law; and (2) clarifying the issue is one of immediate importance to the courts and practitioners concerned with which felony DWI sentencing regime should apply after July 1, 2003. The issue in this case is one concerning statutory enactment and compilation. That the controversy arises in the context of a pressing social problem (DWI) or has collateral consequences to federal highway funding issues is secondary to our role in determining this case.

{6} We issued a calendar notice proposing to hold that Defendants should have been sentenced under HB 278 pursuant to a statutory provision requiring imposition of a lesser punishment if a defendant is sentenced after the effective date of an amendment reducing the sentence. The State responded with a memorandum in opposition. For the reasons that follow, we are unpersuaded and hold that HB 278 is the controlling law after July 1, 2003, and should have been applied in all three cases.

## DISCUSSION

{7} We hold that the sentences here are controlled by NMSA 1978, § 12–2A–16(C) (1997) which provides: "If a criminal penalty for a violation of a statute or rule is reduced by an amendment, the penalty, if not already imposed, must be imposed under the statute or rule as amended." As Defendants had not been sentenced on July 1, 2003, the effective date of HB 278, we hold that the sentencing provisions contained therein should apply to Defendants' sentences.

{8} In its memorandum in opposition, the State argues that a close review of the amendments to Section 66–8–102 during the 2003 legislative session indicate that the changes to the felony DWI provisions contained in HB 117 were intended to remain in effect beyond the July 1, 2003, effective date of HB 278. The Legislature made three independent changes to the DWI statute during the 2003 session. In drafting these amendments, the Legislature prefaced each amendment with language providing the statute section which was to be amended followed by the full text of the statute as amended. The first, titled "New Mexico Commercial Driver's License Act," and designated HB 250, was signed into law on March 19, 2003. *See* 2003 N.M. Laws Ch. 51. The bill retained the preexisting felony DWI punishment contained in Section 66–8–102(G):

> Upon a fourth or subsequent conviction pursuant to this section, an offender is guilty of a fourth degree felony, as provided in Section 31–18–15 NMSA 1978, and shall be sentenced to a jail term of not less than six months, which shall not be suspended or deferred or taken under advisement.

Ch. 51, § 10(G).

{9} The second related bill to pass in the 2003 legislative session was HB 117. The bill substantially rewrote Section 66–8–102, including the following changes to the felony provisions of the statute:

G. Upon a fourth conviction pursuant to this section, an offender is guilty of a fourth degree felony and, notwithstanding the provisions of Section 31–18–15 NMSA 1978, shall be sentenced to a term of imprisonment of eighteen months, six months of which shall not be suspended or deferred or taken under advisement.

H. Upon a fifth conviction pursuant to this section, an offender is guilty of a fourth degree felony and, notwithstanding the provisions of Section 31–18–15 NMSA 1978, shall be sentenced to a term of imprisonment of two years, one year of which shall not be suspended, deferred or taken under advisement.

I. Upon a sixth conviction pursuant to this section, an offender is guilty of a third degree felony and, notwithstanding the provisions of Section 31–18–15 NMSA 1978, shall be sentenced to a term of imprisonment of thirty months, eighteen months of which shall not be suspended, deferred or taken under advisement.

J. Upon a seventh or subsequent conviction pursuant to this section, an offender is guilty of a third degree felony and, notwithstanding the provisions of Section 31–18–15 NMSA 1978, shall be sentenced to a term of imprisonment of three years, two years of which shall not be suspended, deferred or taken under advisement.

{10} HB 117 also included an emergency clause, declaring: "It is necessary for the public peace, health and safety that this act take effect immediately." Ch. 90, § 10. The bill was approved on March 28, 2003, and immediately signed into law by the Governor. Ch. 90, § 10.

{11} The third bill to pass in the 2003 legislative session was HB 278, titled "An Act Relating to Motor Vehicles; Authorizing Intergovernmental Agreements For Exchange of Motor Vehicle Offense Information Between Tribes and the State." Among other things, HB 278 included a new provision recognizing DWI offenses that were committed on tribal lands, and authorized intergovernmental agreements for exchange of information. HB 278, Ch. 164, § 8 (codified as NMSA 1978, § 66–5–27.1 (2003)). With respect to Section 66–8–102 specifically, language was added reflecting the application of its provisions to tribal lands. HB 278, Ch. 164, § 10(M) (codified as NMSA 1978, § 66–8–102(M) (2003)). Critical to our analysis, HB 278 restates the felony DWI language that existed prior to the effective date of HB 117:

Upon a fourth or subsequent conviction pursuant to this section, an offender is guilty of a fourth degree felony, as provided in Section 31–18–15 NMSA 1978, and shall be sentenced to a jail term of not less than six months, which shall not be suspended or deferred or taken under advisement.

Ch. 164, § 10(G) (codified as NMSA 1978, § 66–8–102(G) (2003)). HB 278 was approved on April 4, 2003, and given an effective date of July 1, 2003. HB 278, Ch. 164, § 11.

{12} In its memorandum in opposition, the State initially observes that the chronology of events listed above indicates that all three bills complied with procedural requirements to become good law. In such circumstances, the Legislature has provided the following guidance in NMSA 1978, § 12–1–8 (1977), for purposes of the compilation of statutes:

In carrying out the duties provided by law and contract, absent an expressed contrary legislative intent, the secretary of the New Mexico compilation commission and the advisory committee of the supreme court shall be governed by the following rules:

A. if two or more acts are enacted during the same session of the legislature amending the same section of the NMSA, regardless of the effective date of the acts, the act last signed by the governor shall be presumed to be the law and shall be compiled in the NMSA. The history following the amended section shall set forth the section, chapter and year of all acts amending the section. A compiler's note shall be included in the annotations setting forth the nature of the difference between the acts or sections; and

B. if two or more irreconcilable acts dealing with the same subject matter are enacted by the same session of the legisla-

ture, the last act signed by the governor shall be presumed to be the law. The act last signed by the governor shall be compiled in the NMSA with an annotation following the compiled section setting forth in full the text of the conflicting acts.

Indeed, the New Mexico Compilation Commission has followed this mandate, and HB 278 is contained in Pamphlet 105 of the 2003 Cumulative Supplement to Section 66–8–102.

 {13} This legislative guidance reflects long-standing rules of judicial interpretation of statutes, including that the legislature is presumed to know existing law when it enacts a statute, see, e.g., State v. Alderette, 111 N.M. 297, 299, 804 P.2d 1116, 1118 (Ct. App.1990), and that the latest statute controls when there is irreconcilable conflict. See State v. Montiel, 56 N.M. 181, 182–83, 241 P.2d 844, 845 (1952) (noting the "familiar rule" that when two statutes are passed in same session, the latter statute governs); Clothier v. Lopez, 103 N.M. 593, 595, 711 P.2d 870, 872 (1985) (same).

{14} Additional guidance is found in the Uniform Statute and Rule Construction Act, under the provision titled "Irreconcilable statutes or rules," NMSA 1978, § 12–2A–10(A) (1997), wherein the Legislature reiterates the "last-enacted" rule:

> If statutes appear to conflict, they must be construed, if possible, to give effect to each. If the conflict is irreconcilable, the later-enacted statute governs. However, an earlier-enacted specific, special or local statute prevails over a later-enacted general statute unless the context of the later-enacted statute indicates otherwise.

{15} Here, not only was HB 278 the later-enacted statute, but it was given an effective date of July 1, 2003, thereby assuring that it would replace any version of Section 66–8–102 that was in effect at that time. Because we presume the legislature was aware of the sequential nature and effect of its actions, we are bound to give full force and effect to HB 278.

{16} The State argues that the above-noted rules for resolving the conflict between HB 117 and HB 278 should not end the inquiry, because the overriding goal of any statutory construction is to give effect to the legislature's intent. State v. Martinez, 1998 NMSC 023, ¶ 8, 126 N.M. 39, 966 P.2d 747. With this in mind, the State maintains that it would be absurd for the Legislature to give emergency effect to the heightened punishments for DWI based on public safety, and then turn around and restate the lesser punishments with a statute that takes effect a mere three months later. Cf. State v. Johnson, 1998–NMCA–019, ¶ 19, 124 N.M. 647, 954 P.2d 79 (noting that statutes will not be construed in a manner that leads to an absurd result). Again, however, this is not a case where we are asked to interpret statutory language that is troublesome when given its plain meaning. See id. HB 278 is not absurd on its face, and we are therefore left with irreconcilable conflict which must give effect to the latter bill. To do otherwise interjects courts into the legislative process to correct perceived legislative error.

{17} The State argues that this Court has previously been willing to correct legislative error in similar circumstances. In Quintana v. New Mexico Dep't of Corrections, 100 N.M. 224, 226, 668 P.2d 1101, 1103 (1983), construction of state law held violative of due process by, Devine v. New Mexico Dep't of Corrections, 866 F.2d 339 (10th Cir.1989) (reversing denial of federal habeas relief; holding that the New Mexico Supreme Court's construction of state law in Quintana unforeseeably and retroactively enhanced habeas petitioner's punishment), the Legislature repealed a parole statute, and thereafter in the same session passed an amendment to the repealed statute. In refusing to give effect to the later-enacted bill, the Supreme Court noted that Section 12–1–8 is not an end to the inquiry, concluding that "[i]t is not logical for the Legislature to repeal the law and then amend it." Id. We note that Section 12–2A–10, which does not characterize the later-enacted rule as a mere presumption of legislative intent, was not in effect at the time Quintana was decided. There is no doubt that the language of HB 117 evidences an intent to address the serious public policy issue at stake, but the subsequent re-enactment of prior law could just as well be construed as a legislative backing-off of the heightened punishments. Although we can

agree with the State that there is some likelihood that the Legislature simply erred in this case, and that the Governor's office did not review later legislation for inconsistencies with prior bills signed into law, we do not know with certainty that they were errors, and even if they were, our power to undo them is properly constrained by the law itself. Our concern about interjecting the courts into the arena of legislative process to correct what may or may not have been an intended political calculus is inherent to the doctrine of separation of powers.

{18} Finally, the State argues that Defendants should have received punishments under the law in effect at the time the crimes were committed. The State refers us to the following language in NMSA 1978, § 30-1-2 (1963): "Prosecutions for prior crimes shall be governed, prosecuted and punished under the laws existing at the time such crimes were committed." We note that the DWI statute is part of the Motor Vehicle Code, and not the Criminal Code. Specifically, the DWI statute's sentencing provisions for felony DWI exempt it from the Criminal Procedure Act's sentencing provisions with the language "notwithstanding the provisions of Section 31-18-13 NMSA 1978." Section 66-8-102(G). DWI sentencing is plainly governed by Section 66-8-102, and not the Criminal Code or Criminal Procedure Act. *State v. Greyeyes*, 105 N.M. 549, 553, 734 P.2d 789, 793 (Ct.App.1987) (holding that DWI is outside sentencing provisions of the criminal code).

## CONCLUSION

{19} We hold that Section 66-8-102(G) as enacted by HB 278, effective July 1, 2003, and currently codified in our statutes governs the sentencing of Defendants in this case. Because Defendants should have been sentenced pursuant to this law and were not, we reverse the district court and remand for resentencing.

{20} **IT IS SO ORDERED.**

I CONCUR: A. JOSEPH ALARID, Judge.

LYNN PICKARD, Judge, (dissenting).

PICKARD, Judge, (dissenting).

{21} I respectfully dissent from the majority's holding that the increased sentences enacted by the Legislature in HB 117, which was passed as an emergency measure to address a problem that has plagued New Mexico over the years, were repealed or amended by the later-enacted HB 278, which addressed a relatively less important issue concerning intergovernmental agreements. In my view, more accurate indicators of legislative intent mandate that all three DWI bills passed by the Legislature in 2003 should be given effect.

{22} First, I believe that we should bear in mind the backdrop against which the Legislature enacts DWI legislation and the courts interpret it. Numerous cases have recognized the severity of New Mexico's DWI problem. *See, e.g., City of Albuquerque v. One (1) 1984 White Chevy Ut.*, 2002-NMSC-014, ¶ 18, 132 N.M. 187, 46 P.3d 94 ("In New Mexico, the elimination of driving while intoxicated and its related offenses is a matter of grave concern to society in general, and to our courts and Legislature in particular."); *State ex rel. Schwartz v. Kennedy*, 120 N.M. 619, 624, 904 P.2d 1044, 1049 (1995) ("New Mexico has a serious problem with drunk drivers, with one of the highest rates in the nation of DWI-related fatalities. Our citizens are obviously concerned by this dangerous situation[.]").

{23} Second, in my view, the majority's reliance on Section 12-2A-10(C) begs the question. That statute applies only when there has been an "amendment" to a statute. The issue before the Court in these cases is whether there has been such an amendment.

{24} Third, the way to determine that issue is not by an examination of how laws are supposed to be compiled, but instead by an effort to ascertain the intent of the Legislature. *See Quintana*, 100 N.M. at 226, 668 P.2d at 1103 (indicating, after reciting the laws on compilation, that "[a]ll rules of statutory construction are but aids in arriving at the true legislative intent"). Moreover, the statute governing compilation, § 12-1-8, creates only a presumption that the last act signed by the Governor is the law and ex-

pressly requires the compiler to set forth the history and full text of any conflicting enactments in an annotation, thereby indicating a legislative intent to provide easy access to all enactments for the obvious purpose of facilitating a court interpretation of what is the applicable statute. Finally, on this issue, the statute on construction of apparently conflicting statutes, § 12–2A–10(A), instructs that effect should be given to each if possible.

{25} The leading case on legislative intent in a situation such as confronts the Court in these cases is *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 871 P.2d 1352 (1994). In that case, as in these cases, the Court was presented with facts indicating the possibility of a legislative mistake: in *Helman*, the potential mistake was in referring to a particular fiscal year in the legislation concerning purchase of retirement service credit, *id.* at 353–55, 871 P.2d at 1359–61; in these cases, the potential mistake was in passing several amendments to the same statute in the same year in bills that mostly repeated the original statutory language for the parts that were not amended in the individual bills. Both this Court in *Helman, see id.* at 353, 871 P.2d at 1359, and the majority herein, at ¶ 16, were concerned with issues of separation of powers and intruding on legislative prerogatives. The Supreme Court's response to this view in *Helman* and my response to the majority in this case are the same: "we believe it to be the high duty and responsibility of the judicial branch of government to facilitate and promote the legislature's accomplishment of its purpose[.]" *Id.* at 353, 871 P.2d at 1359. Thus, it is imperative to look to see what the Legislature was trying to accomplish in its passage of the three bills at issue here.

{26} The majority deems it "critical" that HB 278 restated all of the pre-existing language from the DWI sentencing law as it existed prior to the HB 117 amendment. Yet this fact is entirely unremarkable. Restating the whole statute that is proposed to be amended is required by Article IV, Section 18 of the New Mexico Constitution as part of its prohibition against so-called "blind legislation," that is, legislation passed in such a way that the legislators might be unaware

of the existing provisions of the statutes they are amending. *See, e.g., Yeo v. Tweedy,* 34 N.M. 611, 628, 286 P. 970, 977 (1929). Article IV, Section 18 states, "No law shall be revised or amended ... by reference to its title only; but each section thereof as revised [or] amended ... shall be set out in full." N.M. Const. art. IV, § 18. Thus, the existence of pre-HB 117 language in amendments to Section 66–8–102 says little about any legislative intent to return the law to its pre-HB 117 status.

{27} In addition, the amendments to Section 66–8–102 enacted by HB 117 were not expressly repealed by HB 278. Thus, the repeal would of necessity be by implication. Repeals by implication are not favored. *Hall v. Regents of Univ. of N.M.,* 106 N.M. 167, 168, 740 P.2d 1151, 1152 (1987).

{28} What does speak volumes about the Legislature's intent are the facts that the first two bills were passed as emergency measures, the content of all three bills for the most part address different issues, and the third bill signed by the Governor on which the majority relies was the least important bill and was not passed as an emergency measure. In short, the bills are not irreconcilable or in conflict once all of these facts, together with the constitutional requirement of setting out in full the entirety of the section that is proposed to be amended, are considered.

{29} The majority characterizes HB 250 (Chapter 51) by its short title, the New Mexico Commercial Driver's License Act, but otherwise does not describe it or its impact on Section 66–8–102, except to say that it did not change the penalty provisions. In fact, HB 250, as evidenced by its title, was enacted for the purpose of complying with federal law on grade crossing violations and blood or breath alcohol concentrations for commercial drivers. *See State ex rel. Sedillo v. Sargent,* 24 N.M. 333, 337, 171 P. 790, 792 (1918) (indicating that title of statute may be used to construe statute's meaning); *see also* 49 U.S.C.A. §§ 31102, 31310(a), 31311(a) (1997) and 49 C.F.R. § 384.203 (2002) (indicating that federal monies will be withheld from states that do not enact legislation concerning grade crossing violations and prohibiting

commercial drivers from driving with a blood or breath alcohol concentration of .04 or greater). Thus, much of HB 250, given Article IV, Section 18 of the New Mexico Constitution, is devoted to commercial licenses in general and grade crossings, but for purposes of this case, an important change to Section 66–8–102 was the change in Subsection (C), which lowered the legal limit to .04 for commercial drivers. This act was passed and signed as an emergency measure, no doubt due to the federal consequences of not so acting.

{30} The second bill signed by the Governor (HB 117 or Chapter 90) is the one that primarily concerns us in this case. By its title, its purpose was to increase penalties and require treatment for DWI, but it was also passed for the purpose of complying with federal law regarding blood or breath alcohol concentrations for commercial drivers, and it retains the .04 limit in Section 66–8–102(C). It was also passed as an emergency measure.

{31} The third bill, HB 278 or Chapter 164, was enacted, according to its title, to authorize intergovernmental agreements for the exchange of motor vehicle offense information between Indian tribes and the state. The relevant change to Section 66–8–102 was to include tribes in the listing of jurisdictions having DWI offenses that may be used for purposes of determining whether a conviction is a second or subsequent offense. As the majority points out, the penalties stated in HB 278 were the same as what existed prior to HB 117. Importantly, too, for my views, the compliance with federal law was also removed, as Section 66–8–102(C) reverted to its pre-HB 250 state and did not include the .04 level for commercial drivers. This enact-ment was not subject to any emergency clause and became law according to its terms on July 1, 2003.

{32} This specific history indicates that each bill has a different purpose. But for the restatement of earlier law required by the Constitution, each bill could be reconciled one with the other as enacting a law limited to the actual changes it makes to pre 2003 law in accordance with its title. When read against New Mexico's legislative backdrop of continuing concern for the DWI problem, it is inconceivable to me that the Legislature was engaged in "backing-off." The majority's construction nullifies the fact that HB 117 was passed as an emergency measure, as was HB 250. The majority's construction puts the state at jeopardy for receiving federal funding. The Legislature and public might find it absurd that, by enacting a provision in the ordinary course of dealing with intergovernmental agreements regarding DWI, the Legislature intended to repeal two emergency measures, one critical to the state's finances and the other intended to do something about one of the state's most intractable problems.

{33} The majority believing otherwise, I respectfully dissent. I would uphold Defendants' sentences and instruct the compiler to compile all three laws as a synthesized whole in accordance with what was obviously the Legislature's intent.