2004-NMSC-032

98 P.3d 1022

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Kathleen SMITH, Roy Gonzales, and Richard Montoya, Defendants–Respondents.**

No. 28,477.

Supreme Court of New Mexico.

Sept. 16, 2004.

Patricia A. Madrid, Attorney General, Stuart M. Bluestone, Chief Deputy Attorney General, Margaret McLean, Assistant Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Nancy L. Simmons, Jack Bennett Jacks, Albuquerque, NM, for Respondents.

Hilary Chandler Tompkins, Santa Fe, NM, for Amicus Curiae Office of the Governor.

Michael B. Browde, Albuquerque, NM, Paula Tackett, Santa Fe, NM, for Amicus Curiae N.M. Legislature.

## OPINION

BOSSON, Justice.

{1} During the 2003 session, the New Mexico Legislature significantly amended the penalty provisions of the DWI statute, NMSA 1978, § 66–8–102(G) (1953, as amended through 2003), so as to increase the sentences for repeat offenders. *See* 2003 N.M. Laws, ch. 90, § 3. On appeal from Defendants' DWI convictions, the Court of Appeals reversed the sentences imposed. The court held that the penalty provisions, as amended, were a nullity because another bill, passed during the same legislative session and subsequently signed into law, implicitly repealed the prior amendment, and left Section 66–8–102(G) as it was before the 2003 session without the increased sentences for repeat offenders. We granted certiorari to review legislative intent. Having determined that the legislature clearly intended to amend and increase the penalties for repeat offenders, notwithstanding language in another, later-enacted bill, we reverse and reinstate the increased sentences imposed upon Defendants in this case.

## BACKGROUND

{2} During the 2003 session, the legislature passed three bills to amend Section 66–8–102, the DWI statute. On March 19, 2003, the governor signed House Bill (HB) 250, 2003 Leg., 46th Sess. (N.M.2003), 2003 N.M. Laws, ch. 51, § 10, which lowered the limit for commercial drivers' blood or breath alcohol concentration to .04, and repeated, without change, the existing penalty provisions of Section 66–8–102(G). House Bill 250 immediately became law pursuant to its emergency clause. On March 28, 2003, the governor signed into effect HB 117, 2003 Leg., 46th Sess. (N.M.2003), 2003 N.M. Laws, ch. 90, § 3, which also contained an emergency clause. House Bill 117 amended the sentencing provisions of the DWI statute by increasing the terms of imprisonment for those who have committed four to seven (and subsequent) felony offenses. Finally, on April 5, 2003, the governor signed HB 278, 2003 Leg., 46th Sess. (N.M.2003), 2003 N.M. Laws, ch. 164, § 10, which did not contain an emergency clause and went into effect July 1, 2003. House Bill 278 amended Section 66–8–102 by authorizing intergovernmental agreements between tribes and the state in order to share information needed to prosecute repeat DWI offenders. As part of the constitutional amendment process, HB 278 also restated the remaining portions of Section 66–8–102 it was not amending, which included the penalty provisions set forth in Section 66–8–102(G) in its then-current form, prior to the changes enacted in HB 117. *See* N.M. Const. art. IV, § 18 ("No law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full.").

{3} House Bill 278 is the law currently appearing in New Mexico Statutes Annotated as Section 66–8–102, though the other two amendments are noted and printed in full in the annotation. As the last bill signed by the governor amending Section 66–8–102, HB 278 and its effect on the penalty provisions of the original Section 66–8–102(G) is the controversy we now address.

{4} Defendants Kathleen Smith, Roy Gonzales and Richard Montoya were sentenced as fifth-, sixth-, and seventh-time felony DWI offenders, respectively. The same district judge sentenced each Defendant pursuant to the increased penalty provisions in HB 117, the law in effect at the time the crimes were committed. All Defendants appealed, arguing that the law in effect at the time of their sentencing, which occurred after July 1, 2003,

was HB 278. As previously mentioned, HB 278 did not refer to the increased penalties of HB 117.

{5} The Court of Appeals issued separate calendar notices proposing to reverse the district court. The State filed a memorandum in opposition. After consolidating the appeals, the Court of Appeals, acting on its summary calendar without formal briefing or argument, issued a divided opinion concluding that the district judge imposed the wrong sentences. *State v. Smith*, 2004–NMCA–026, ¶ 19, 135 N.M. 162, 85 P.3d 804. The Court of Appeals majority held that the penalty provisions controlled as set forth in HB 278, the last bill signed into law affecting Section 66–8–102. *Id.* Thus, DWI offenders sentenced after July 1, 2003 were not subject to HB 117, the second bill signed into law providing for more severe penalties.

{6} The majority concluded that NMSA 1978, § 12–2A–16(C) (1997) required a lesser punishment to be imposed if a defendant is sentenced after the effective date of an amendment reducing the penalty.[1] *Smith*, 2004–NMCA–026, ¶ 7, 135 N.M. 162, 85 P.3d 804. Because Defendants had not been sentenced by July 1, 2003, when HB 278 went into effect, the Court of Appeals held that sentencing provisions of the later-enacted bill applied to Defendants, and accordingly, reversed the district court and remanded for reduced sentencing. *Id.* ¶ 1. We granted the State's petition for certiorari, finding that the validity of House Bill 117 and its increase in felony DWI penalties is a matter of substantial public interest. *See* Rule 12–502(C)(4)(d) NMRA 2004. The New Mexico Legislature and the Governor submitted a joint amicus brief to this Court in support of the State's position before this Court.

## DISCUSSION

{7} The specific issue in this case is the legislative intent behind the three bills passed during the 2003 legislative session and the effect of those bills upon Section 66–8–102, the DWI statute. The Court of Appeals characterized the issue as "one concerning statutory enactment and compilation." *Smith*, 2004–NMCA–026, ¶ 5, 135

N.M. 162, 85 P.3d 804. The majority held that the last amendment signed by the governor controls the sentencing. *Id.* ¶ 19. Judge Pickard dissented, stating "it is imperative to look to see what the Legislature was trying to accomplish in its passage of the three bills at issue here." *Id.* ¶ 25 (Pickard, J., dissenting). We agree with the dissent.

## Standard of Review

{8} We review questions of statutory interpretation *de novo*. *State v. Rivera*, 2004–NMSC–001, ¶ 9, 134 N.M. 768, 82 P.3d 939. Our ultimate goal in statutory construction "is to ascertain and give effect to the intent of the Legislature." *State v. Cleve*, 1999–NMSC–017, ¶ 8, 127 N.M. 240, 980 P.2d 23. It is "the high duty and responsibility of the judicial branch of government to facilitate and promote the legislature's accomplishment of its purpose." *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994).

{9} We begin by looking at the language of the statute itself. *State v. Johnson*, 2001–NMSC–001, ¶ 6, 130 N.M. 6, 15 P.3d 1233 (2000). However, we exercise caution in applying the plain meaning rule. "Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate (i.e., non-frivolous) differences of opinion concerning the statute's meaning." *State ex rel. Helman*, 117 N.M. at 353, 871 P.2d at 1359. The plain meaning rule "must yield on occasion to an intention otherwise discerned in terms of equity, legislative history, or other sources." *Sims v. Sims*, 1996–NMSC–078, ¶ 21, 122 N.M. 618, 930 P.2d 153 (internal quotation marks and quoted authority omitted). Our task is to determine how the original drafters would have applied these amendments to the existing statute. *See State ex rel. Helman*, 117 N.M. at 354, 871 P.2d at 1360 ("As nearly as we can, we must put ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situation; and, although their words are by far the most decisive evidence

---

1. Section 12–2A–16(C) states: "If a criminal penalty for a violation of a statute or rule is reduced by an amendment, the penalty, if not already imposed, must be imposed under the statute or rule as amended."

of what they would have done, they are by no means final." (quoting Judge Learned Hand's concurring opinion in *Guiseppi v. Walling*, 144 F.2d 608, 624 (2d Cir.1944))).

■ {10} This Court has rejected a formalistic and mechanical statutory construction when the results would be absurd, unreasonable, or contrary to the spirit of the statute. *See State ex rel. Helman*, 117 N.M. at 351–52, 871 P.2d at 1357–58. In addition to looking at the statutory language, "we also consider the history and background of the statute." *Rivera*, 2004–NMSC–001, ¶ 13, 134 N.M. 768, 82 P.3d 939. We examine the overall structure of the statute and its function in the comprehensive legislative scheme. *Id.* "[A] statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter." 2A Norman J. Singer, *Statutes and Statutory Construction* § 46:05, at 165 (6th ed., rev.2000). Whenever possible, "we must read different legislative enactments as harmonious instead of as contradicting one another." *State v. Muniz*, 2003–NMSC–021, ¶ 14, 134 N.M. 152, 74 P.3d 86 (quoted authority omitted). Finally, when a statute is ambiguous, we may consider the clear policy implications of its various constructions. *See Ortiz v. BTU Block & Concrete Co.*, 1996–NMCA–097, ¶ 13, 122 N.M. 381, 925 P.2d 1.

{11} We now apply these principles of statutory construction to determine the effect of the three legislative enactments on the penalties for repeat DWI offenders.

**Rules of Statutory Construction Applied**

■ {12} The Court of Appeals majority relied on the premise that HB 278, the last bill signed into law by the governor, necessarily conflicted with HB 117, the second bill signed by the governor. *See Smith*, 2004–NMCA–026, ¶ 16, 135 N.M. 162, 85 P.3d 804. After characterizing the successive amendments as irreconcilable, the majority then

relied on guidance the legislature has provided to the New Mexico Compilation Commission in NMSA 1978, Section 12–1–8(B) (1977) for resolving irreconcilable legislative acts. *Smith*, 2004–NMCA–026, ¶ 12, 135 N.M. 162, 85 P.3d 804. According to Section 12–1–8(B),

> if two or more irreconcilable acts dealing with the same subject matter are enacted by the same session of the legislature, the last act signed by the governor shall be presumed to be the law. The act last signed by the governor shall be compiled in the NMSA with an annotation following the compiled section setting forth in full the text of the conflicting acts.

The majority also relied on the provisions for "irreconcilable statutes and rules" in the Uniform Statute and Rule Construction Act. NMSA 1978, § 12–2A–10(A) (1997) ("If statutes appear to conflict, they must be construed, if possible, to give effect to each. If the conflict is irreconcilable, the later-enacted statute governs."); *see Smith*, 2004–NMCA–026, ¶ 14, 135 N.M. 162, 85 P.3d 804.

■ {13} At the outset, we believe the majority relies on a faulty premise, namely, that the three amendments to the DWI statute are irreconcilable. As a court, our task is to construe statutes in harmony whenever possible. *See State v. Rue*, 72 N.M. 212, 216, 382 P.2d 697, 700 (1963); *see also State v. Herrera*, 86 N.M. 224, 226, 522 P.2d 76, 78 (1974) ("We will not construe statutes to achieve an absurd result or to defeat the intended object of the legislature."). Even under Section 12–2A–10(A), the rule of statutory construction relied on by the majority, we are directed that "[i]f statutes appear to conflict, they must be construed, if possible, to give effect to each." When we look at the language of the three enactments, in addition to their titles and purposes, we conclude that all three can be construed harmoniously to give effect to each.

{14} House Bill 117 substantially rewrote the felony provisions of Section 66–8–102.[2]

---

**2.** Before the 2003 amendments, NMSA 1978, Section 66–8–102(G) (1953, as amended through 2003) stated:

> Upon a fourth or subsequent conviction pursuant to this section, an offender is guilty of a fourth degree felony, as provided in Section 31–18–15 NMSA 1978, and shall be sentenced

to a jail term of not less than six months, which shall not be suspended or deferred or taken under advisement.

Among other things, HB 117 amended subsection G and added subsections H, I and J. These changes were set forth in the annotation to Section 66–8–102 as follows:

The purpose of changing the penalty provisions was clearly announced in its title ("Relating to Driving While Under the Influence of Intoxicating Liquor or Drugs; Increasing Penalties for Felony DWI Offenders"). *See State ex rel. Sedillo v. Sargent,* 24 N.M. 333, 337, 171 P. 790, 791–92 (1918) (The title of a statute may be used to construe a statute's meaning.). House Bill 117 contained an emergency clause and became law upon the governor's signature. As the title and emergency clause indicate, HB 117's main goal was to have an immediate impact upon felony sentencing for repeat DWI offenders in response to a perceived public crisis.

{15} House Bill 278, on the other hand, served a different and more limited purpose. Entitled "An Act Relating to Motor Vehicles; Authorizing Intergovernmental Agreements For Exchange of Motor Vehicle Offense Information Between Tribes and the State," this bill simply added language to Section 66–8–102(M), not 66–8–102(G), that reflected an intergovernmental agreement to exchange information so as to recognize DWI offenses committed on tribal lands. Nothing was mentioned in the title about penalty provisions. However, as part of the constitutional amendment process, HB 278 repeated the pre-existing language of Section 66–8–102(G), as it did with all other subsections of Section 66–8–102 that were not amended.

{16} House Bill 250's amendments to Section 66–8–102 focused on another narrow and unrelated goal: to lower the legal limit for blood alcohol concentration for commercial drivers so as to respond to federal law and secure federal funding. As with HB 278, this purpose was reflected in HB 250's title. Changes were made to the language of a specific subsection, not subsection (G), and the entire Section 66–8–102 was then reprinted, including the pre-existing language of Section 66–8–102(G) according to the constitutional requirement of Article IV, Section 18.

{17} The apparent objective of all three amendments to Section 66–8–102 was to make specific, independent improvements to the DWI statute. Within the overall structure of that statute, all of these changes can be recognized by focusing on the different purpose of each bill. It is clear that none of these purposes conflict, and neither the court below nor Defendants before this Court contend otherwise.

{18} Notwithstanding the harmonious purposes of the three amendments, the Court of Appeals concluded that HB 117 and HB 278 were irreconcilable solely because of the language of the penalty provisions. *Smith,* 2004–NMCA–026, ¶ 16, 135 N.M. 162, 85 P.3d 804. The Court of Appeals found it "critical" to its analysis that HB 278 restated the felony DWI language of Section 66–8–102(G), as it existed before HB 117 became law. *Smith,* 2004–NMCA–026, ¶ 11, 135 N.M. 162, 85 P.3d 804. As the majority saw it, the plain language of HB 278, coupled with its effective date of July 1, assured that HB 278 would replace any version of Section 66–8–102(G) in effect on that date, even though Section 66–8–102(G) had just been amended by HB 117. *Smith,* 2004–NMCA–026, ¶ 15, 135 N.M. 162, 85 P.3d 804.

---

G. Upon a fourth conviction pursuant to this section, an offender is guilty of a fourth degree felony and, notwithstanding the provisions of Section 31–18–15 NMSA 1978, shall be sentenced to a term of imprisonment of eighteen months, six months of which shall not be suspended or deferred or taken under advisement.

H. Upon a fifth conviction pursuant to this section, an offender is guilty of a fourth degree felony and, notwithstanding the provisions of Section 31–18–15 NMSA 1978, shall be sentenced to a term of imprisonment of two years, one year of which shall not be suspended, deferred or taken under advisement.

I. Upon a sixth conviction pursuant to this section, an offender is guilty of a third degree felony and, notwithstanding the provisions of Section 31–18–15 NMSA 1978, shall be sentenced to a term of imprisonment of thirty months, eighteen months of which shall not be suspended, deferred or taken under advisement.

J. Upon a seventh or subsequent conviction pursuant to this section, an offender is guilty of a third degree felony and, notwithstanding the provisions of Section 31–18–15 NMSA 1978, shall be sentenced to a term of imprisonment of three years, two years of which shall not be suspended, deferred or taken under advisement.

2003 N.M. Laws ch. 90, § 3. HB 250 and HB 278 did not add new language to subsection (G), but merely restated the pre-existing penalty provisions of Section 66–8–102(G) as it existed before the 2003 legislative session.

{19} We are skeptical of reading too much into a passive and incidental legislative act, namely, the reprinting of old penalty provisions in two bills, HB 278 and HB 250, that were fashioned to address subjects other than penalties. A better explanation lies in the random timing of bill passage in the legislature. Even though HB 278 was signed into law last, it passed the legislature six days *before* HB 117 was passed. At that point in the legislative process, Section 66–8–102(G) had not yet been amended, and therefore the legislature had no choice but to restate Section 66–8–102(G) as it then existed. Read against the general background of the legislative process, HB 278's restatement of the original penalty provisions of Section 66–8–102(G) cannot be interpreted as a deliberate legislative intent to repeal the stricter penalty provisions of HB 117.

{20} A more obvious explanation for restating the old language of the penalty provisions is that the New Mexico Constitution requires it. *See* N.M. Const. art. IV, § 18. In both HB 250 and HB 278, the legislature repeated the old language of Section 66–8–102(G) because it had to. As the dissent below recognized, the fact that the legislature restated the entire section "says little about any legislative intent." *Smith*, 2004–NMCA–026, ¶ 26, 135 N.M. 162, 85 P.3d 804. Rather, it suggests that the drafters were simply fulfilling the constitutional requirement for passing valid legislation. Given the dynamic and sometimes frenzied way in which bills are introduced, passed, and signed into law during a single legislative session, we would place an impractical burden on both the legislature and the governor, if we were to require them to reconcile all bills in advance of their passage or signature, simply because Article IV, Section 18 requires the legislature to set out the entire section in each amending bill. *See Gebhardt v. Superior Court for King County*, 15 Wash.2d 673, 131 P.2d 943, 953 (1942) (Robinson, C.J., dissenting) ("If the majority opinion be correct, it will be difficult, and in some cases perhaps impossible, to make more than one amendment to an existing act during any one legislative session.").

{21} A better rule is to make legislative intent paramount to the application of a mechanical rule. To hold that these amendments are irreconcilable elevates form over function, and leads to a result clearly not intended by the legislature. In passing a law to establish intergovernmental agreements, which is but a small part of the overall goal to improve DWI prosecutions, the legislature gave no indication of an intent to repeal other key components of that same goal. *See U.S. Steel Co. v. County of Allegheny*, 369 Pa. 423, 86 A.2d 838, 841 (1952) (stating that the question of repeal is not just a question of mechanical rules, but of legislative intent). Absent any evidence to the contrary, we cannot conclude that the legislature intended to undo the comprehensive emergency measures of HB 117, when it passed an unrelated and narrow amendment obviously intended to complement the general goal of strengthening our DWI laws. Taking that argument to its logical conclusion, if HB 278 were read to repeal earlier enactments, then it would also repeal HB 250, because HB 278 restated the former language of that subsection as well. It makes little sense that the legislature would jeopardize federal funding in this manner.

{22} Thus, in this case, we ascribe little importance to the fact that the legislature reprinted the old penalty provisions of subsection G. Much more "critical" to our analysis is legislative intent. Given the clear purposes of these three amendments, we decline to rely on the "beguiling simplicity" of Defendants' argument. In the course of amending a particular subsection of existing law, if the legislature restates existing law simply to comply with Article IV, Section 18 of the state constitution, we are not obliged to read into that legislative act a repeal by implication of other legislation passed in the same session. Repeals by implication are not favored. *See Hall v. Regents of Univ. of N.M.*, 106 N.M. 167, 168, 740 P.2d 1151, 1152 (1987); *Rue*, 72 N.M. at 216, 382 P.2d at 700.

{23} Finally, we do not encroach upon principles of separation of powers when we consider the clear policy implications of the various constructions of the statutory enactments. *See Rivera*, 2004–NMSC–001, ¶ 14, 134 N.M. 768, 82 P.3d 939. We are not second-guessing either the legislature or the governor. House Bill 117 was passed by a

unanimous vote, with an emergency clause that stated: "It is necessary for the public peace, health and safety that this act take effect immediately." 2003 N.M. Laws, ch. 90, § 10. It defies logic and reason to suppose that the legislature would pass, and the governor would immediately sign into law, such a sweeping emergency reform as that contemplated in HB 117, only to then pass a more limited law with a later date of enactment, "thereby assuring that it would replace any version of Section 66–8–102 that was in effect at that time." *Smith,* 2004–NMCA–026, ¶ 15, 135 N.M. 162, 85 P.3d 804. Nothing suggests to us that the pressing emergency the legislature intended to address was either so fleeting or so easily resolved within the scope of a few months. Given that "every presumption is to be indulged in favor of the validity and regularity of legislative enactments," we are further compelled by strong policy reasons to give effect to an amendment that received overwhelming legislative approval. *See City of Raton v. Sproule,* 78 N.M. 138, 142, 429 P.2d 336, 340 (1967).

{24} Accordingly, we hold that the three legislative enactments do not conflict, and certainly they do not conflict irreconcilably. Without such a conflict, Section 12–1–8, the legislative directive guiding the compilation commission, does not preclude us from giving effect to legislative intent. *See Quintana v. N.M. Dep't of Corr.,* 100 N.M. 224, 226, 668 P.2d 1101, 1103 (1983) (holding that Section 12–1–8 applies to rules of construction governing the compilation of statutes and is not dispositive). The compilation rules establish no more than a presumption that the later-enacted statute is the law.

{25} In holding that all three amendments to Section 66–8–102 are valid enactments, we nonetheless affirm the importance of Section 12–1–8 in providing guidance to the compilation commission as it organizes the work of the legislature. Faced with the appearance of a conflict, the commission has no choice but to compile the last act signed by the governor as presumptive law. In most cases, that presumption will undoubtedly prevail. Yet in limited circumstances it may not. By providing in Section 12–1–8(B) that conflicting acts be set forth in full in the annotation, the legislature has assured that the courts will ultimately decide whether a conflict exists and whether that conflict is irreconcilable. If we were to transform Section 12–1–8 into a bright-line rule, that the last-enacted amendment is always the legislature's final word, we would contravene clear legislative intent to the contrary. We would also be abdicating a core judicial responsibility, which is to construe and give full force and effect to legislative intent.

## Ex Post Facto/Due Process

▮ {26} Defendants Gonzales and Montoya also argue that even if we conclude that the legislature intended to give HB 117 the force of law, then nonetheless this Court may not retroactively apply that decision to these Defendants consistent with the state and federal constitutions. They contend that the HB278 (repealing HB117) was in effect between July 1, 2003 and the effective date of any opinion from this Court to the contrary, and therefore it would be unconstitutional to apply any law other than HB 278 to their sentencing. This argument does not persuade us.

{27} At the time Defendants committed their crimes, in each case between March 28 and July 1, 2003, HB 117 and its harsher penalty provisions for repeat DWI offenses was undeniably in effect in New Mexico. Thus, the prohibition against ex post facto laws in Article II, Section 19 of the New Mexico Constitution is not at issue here, because HB 117 went into effect immediately under its emergency clause.

▮ {28} Defendants also are wrong to complain that applying the increased penalties deprives them of a "right of fair warning" consistent with their rights to due process. *See Rogers v. Tennessee,* 532 U.S. 451, 455, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) ("due process prohibits retroactive application of any judicial construction of a criminal statute [that] is unexpected and indefensible by reference to the law which has been expressed prior to the conduct in issue") (internal quotation marks and quoted authority omitted). Defendants rely on *Devine v. New Mexico Department of Corrections,* 866 F.2d 339 (10th Cir.1989), which reviewed this Court's decision in *Quintana,* 100 N.M. 224,

668 P.2d 1101. In *Quintana*, we examined the effect of two acts passed in the same legislative session amending parole eligibility requirements. One enactment repealed a 1955 law that made prisoners serving a life sentence eligible for parole after serving ten years, and instead provided that capital felons must serve a minimum of 30 years. Another enactment, passed later that same day, amended the 1955 law by enacting a victim restitution law, but restated the same parole eligibility requirements as the 1955 law prior to amendment. Seeking to take advantage of that perceived inconsistency, one prisoner argued that under Section 12–1–8, when two acts of the same legislative session conflict, the statute enacted last repeals the previous enactment. *Quintana*, 100 N.M. at 226, 668 P.2d at 1103.

{29} In response, this Court held that the legislature intended to provide stricter parole eligibility requirements because the first act *repealed* the 1955 law, while the second law merely *amended* it, and thus the first act was in effect when the defendant committed his crime. *Id.* at 226–27, 668 P.2d at 1103–04. However, the United States Court of Appeals for the Tenth Circuit found that our decision upholding the stricter parole eligibility requirements violated the due process clause, because it applied retroactively without providing fair notice. *See Devine*, 866 F.2d at 339.

{30} *Devine* was driven by special facts. The notice issue in *Devine* involved a defendant's ability to be fully informed of the consequences of a guilty plea. The Tenth Circuit concluded that at the time the defendant entered his guilty plea, he had no indication from the official compilation of statutes that the mandatory prison term was thirty years and not ten years. *Id.* at 345. Thus, this Court's decision in *Quintana* was unforeseeable to the defendant negotiating his plea, and its retroactive application violated due process. *Id.* (stating that a decision is unforeseeable if it is "unexpected and indefensible by reference to the law which *had been expressed* prior to the conduct in issue" (internal quotation marks and quoted authority omitted)).

{31} Unlike the situation in *Devine*, however, it is entirely foreseeable that the penalty provisions of HB 117 applied to these Defendants. Not only were the increased penalty provisions in force at the time Defendants committed their repeat DWI offenses, but Defendants had additional notice not present in *Devine*, 866 F.2d 339. In *Devine*, the last law signed by the governor, restating the easier parole eligibility requirements, was set forth in the 1978 compilation, and the conflicting act providing stricter parole requirements was only mentioned in the compiler's notes. *Id.* at 340, 345. The Tenth Circuit concluded that this oblique reference was unforeseeable. *Id.* at 345.

{32} In contrast, all three amendments to Section 66–8–102 were noted and printed in the compilation. In full compliance with due process requirements, HB 117 was enacted in a public forum before Defendants committed their crime, published in the session laws, and set forth in full in the New Mexico Statutes Annotated. Therefore, Defendants had adequate notice that the increased penalty provisions controlled their sentences.

## CONCLUSION

{33} We reverse the Court of Appeals and uphold Defendants' sentences.

{34} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and EDWARD L. CHÁVEZ, Justices.